# EXHIBIT "C"



August 7, 2023

Kevin Crowley
918 Maple Street
Conshohocken, PA 19428
kcrowley@marchfwd.com

Re:     Insured:                    Kevin Crowley
        Insurer:                    Markel American Insurance Company
        Policy:                     Life Insurance Agents Professional Liability Policy
        Sponsoring Company:         Penn Mutual Life Insurance Company
        Policy No.:                 MKLM7PLCA00065
        Policy period:              August 1, 2022 to August 1, 2023
        Claimants:                  Paul & Marie Friedman
        Markel Claim No.:           MXXL96790
        Lancer Claim No.:           619560

Dear Mr. Crowley:

As you are aware, Lancer Claims Services ("Lancer") has been engaged to handle the above-captioned matter on behalf of Markel American Insurance Company ("MAIC").

We wish to acknowledge receipt of the above potential claim involving Paul & Marie Friedman ("Claimants"). You have asked that MAIC provide coverage under the above-referenced policy (the "Policy").

Basis of the Potential Claim:

While this letter may refer to certain allegations made by certain parties, we recognize that those allegations are unsubstantiated at this time, and nothing in this letter is intended to suggest or imply that they have any legal or factual merit.

The conclusions of Lancer and MAIC are based on the following facts and allegations:

You received a letter from claimants' counsel, dated June 29, 2023, which notes that they believe that the premium financing program that was used was unsuitable for their needs. The letter states that counsel and claimants are prepared to meet with you and your counsel to discuss resolving the issues. The letter notes that if a meeting is to happen that it must include all persons with the authority to conclude a settlement that includes rescission of the policies and return of the premiums, and that documents of all involved are preserved for evidence.

August 7, 2023
Kevin Crowley
Page 2

You met with the claimants in 2021 to discuss life insurance policies. Claimants owned a very successful business where they had a $2-3M salary and said the value of the business was $20M which they were going to sell in 2 – 3 years for $150M. The premiums were to be paid using premium financing, which was to be arranged and handled through Succession Capital and WinTrust Bank. The reason for the policies was for the tax benefits.

The claimants ended up purchasing a guaranteed whole life policy for each of them in October 2021. In 2022, you learned that the Claimants were purchasing properties in downtown Philadelphia and were paying cash. You also learned that there were some sorts of issues with the Claimants' business.

In February 2023, you met with the Claimants, and they were asking questions about the financing. You got the impression that their financial situation had changed, and they were looking to get out of the policies. You attempted to provide other options for the Claimants as the policies were intended to be a long-term investment. The Claimants did not want to partake in the other options and you did not hear anything more until you received the letter from their attorney.

This matter was reported to Lancer on July 6, 2023.

**<u>At this time, this does not appear to be a Claim against you as defined by the policy.</u>**

<u>The MAIC Policy</u>:

The Policy is issued to you by MAIC and is effective for the Policy Period of August 1, 2022 to August 1, 2023. The Policy has a Retroactive Date of March 19, 2015. The Policy provides Limits of Liability of $1,000,000 each Claim subject to an aggregate limit of $1,000,000. The Limits are subject to a Deductible of $1,500.00 which applies to loss only. You are responsible for paying your deductible. Under no circumstances shall MAIC be responsible for any amounts in excess of the Limit of Liability.

The Insuring Agreement of the Policy reads, in relevant part, as follows:

**SECTION I – INSURING AGREEMENTS**

**A.**      **Professional Liability**

The **Insurer** shall pay, on behalf of an **Insured**, **Damages** which an **Insured** becomes legally obligated to pay because of a **Claim** that is both made against an **Insured** and reported to the **Insurer** in writing during the **Certificate Period** (as to an **Agent** or **Registered Representative**), or as allowed by Section **XI** — Notice Of Claim below, or during an Extended Reporting Period, if applicable, for a **Wrongful Act** or **Interrelated Wrongful Act** committed solely in the rendering of or failing to render **Professional Services** by an **Insured**, provided:

August 7, 2023
Kevin Crowley
Page 3

    **1.**      Such **Wrongful Act** or any **Interrelated Wrongful Act** occurred on or after the **Retroactive Date** and before the end of the **Certificate Period** (as to an **Agent** or **Registered Representative**) or the **Policy Period** (as to the Broker-Dealer); and

    **2.**      As of the inception date of this Policy as shown in the Master Policy Declarations, no **Insured** had knowledge or reasonable basis upon which to anticipate that the **Wrongful Act** or any **Interrelated Wrongful Act** could result in a **Claim**.

***

The Policy provides relevant definitions, as follows:

**SECTION IV – DEFINITIONS**

    **F.**     **Claim** means a written demand received by an **Insured** for **Damages** (including pleadings received in a civil litigation or arbitration) because of an actual or alleged **Wrongful Act** or, with respect to Section **I** — Insuring Agreement **B.** Managing Agents Management Liability, an actual or alleged **Management Wrongful Act**.

***

    A **Claim** does not include the following:

    **1.**      A demand for declaratory, injunctive or other non-monetary relief;

    **2.**      Any form of criminal proceeding; or

    **3.**      Any proceeding commenced by a governmental or quasi-governmental official or agency or any self-regulatory official or agency, except for a **Disciplinary Proceeding**, but only with respect to coverage provided by Section **IV** – Coverage Extension **A.** or if the agency or official is a client of the **Insured** in connection with the rendering of **Professional Services**.

***

    **H.**     **Damages** means monetary judgments, settlements or awards resulting from a **Claim**.  **Damages** do not include the following:

    1.      Taxes, fines or penalties, unless incurred by a claimant and made part of a **Claim** against an **Insured**;

August 7, 2023
Kevin Crowley
Page 4

2.      Punitive or exemplary damages;

3.      The multiplied portion of a multiplied award;

4.      The return, restitution, reduction, compromise or refund of commissions, fees or charges;

5.      Costs incurred as a result of non-monetary, declaratory or injunctive relief;

6.      Any matters that are deemed uninsurable under the law; and

**7.      Claim Expenses.**

***

**PROFESSIONAL SERVICES AMENDMENT ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMPANY SPONSORED INSURANCE AGENTS PROFESSIONAL LIABILITY INSURANCE POLICY ISSUED TO PENN MUTUAL LIFE INSURANCE COMPANY.**

It is here by understood and agreed that in consideration of the premium charged, and solely with respect to Non Affiliated Homer, Townsend & Kent, Inc./"Life Only" Agents of the **Sponsoring Company**, Section **V**, Paragraph **U**. -- Definition of **Professional Services** -- is deleted in the entirety and replaced with the following:

**Professional Services** means:

**1.**      The solicitation, sale or servicing of the following:

**a.**      Life insurance, accident and health insurance, workers' compensation insurance as part of a 24-Hour accident and health insurance product, managed care organization contracts, long term care products, disability income insurance and fixed annuities;

**b.**      Employee benefit plans, including, but not limited to, **Placement of Coverage with Multiple Employer Welfare Arrangements**, **Self-Funded Plans**, group plans, group or ordinary pension or profit sharing plans, retirement annuities, KEOGH retirement plans, life, accident and health and/or disability plans;

However, coverage for **Claims** based upon, arising out of or in any way involving, in whole or in part, **Placement of Coverage with**

August 7, 2023
Kevin Crowley
Page 5

**Multiple Employer Welfare Arrangements** is subject to the following Sub-Limits of Liability (which are part of an not in addition to the other Limits of Liability provided by the Policy) and Deductible, unless **Placement of Coverage with Multiple Employer Welfare Arrangements** is made in accordance with the **Sponsoring Company's** written procedures for such placement and same is funded .in whole or in part, by insurance products issued by the **Sponsoring Company**:

Each **Claim**:                            $500,000

**Agent** Aggregate:              $500,000

Deductible (**Damages** only):  $5,000

In addition, coverage for **Claims** based upon, arising out of or in any way involving **Self-Funded Plans** is applicable to **Claims Expenses** only, and not **Damages**; and

c.      Pharmacy benefit management plans either approved by the Centers for Medicare and Medicaid Services or that are sold in conjunction with a group or individual medical plan;

2.     Providing advice, consultation, administration and/or services in connection with any of the products listed in Paragraph **1.**, above, whether or not a separate fee is charged;

3.     Consultation with participants in an employee benefit plan in order to explain the provisions of such plan and the handling of day-to-day ministerial functions required by such plan including, but not limited to, enrollment, record keeping and filing reports with governmental agencies;

4.     Provision of financial p laming services including, but not limited to, the recommendation or preparation of a financial program for a client involving the client's present and anticipated assets and liabilities, and shall include recommendations regarding savings, investments, insurance, anticipated retirement, estate planning or other employee benefits, whether or not a separate fee is charged;

5.     Notary Public Services; or

6.     The purchase, sale or giving advice regarding life settlements arranged through a provider approved by the **Sponsoring Company** provided:

a.      On or before the life insurance policy is settled, the **Insured** obtained a signed and dated waiver from all beneficiaries of the life insurance policy acknowledging that the life settlement will occur;

August 7, 2023
Kevin Crowley
Page 6

     **b.**     On or before the life insurance policy is settled, the owner(s) of the life insurance policy has/have signed the provider's life settlement purchase and/or sale agreement;

     **c.**     The **Insured** was approved in writing by the **Sponsoring Company** or the **Broker/Dealer** to engage in life settlement transactions;

     **d.**     The life settlement transaction complies with the **Sponsoring Company's** or the **Broker/Dealer's** policies and procedures for life settlement transactions; and

     **e.**     The life settlement does not involve terminally ill clients in accordance with the definition of "terminally ill" by the relevant state.

**All other terms and conditions remain unchanged.**

The Policy also provides relevant exclusions, as follows:

**SECTION VI – EXCLUSIONS**

This Policy shall not apply to, and the **Insurer** shall pay neither **Damages** nor **Claim Expenses** for, any **Claim**:

***

     **U.**     Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:

     **1.**     Promissory notes, viatical settlements involving terminally ill clients in accordance with the definition of "terminally ill" by the relevant state, or any **Securities** backed by promissory notes or such viatical settlements;

     **2.**     Commodities, commodity futures and option contracts, except for option contracts that are covered by ownership of the underlying **Securities**, cash or cash equivalent, not including margin;

     **3.**     Any "junk bonds" or "high yield bonds" (for purposes of this exclusion, "junk bonds" or "high yield bonds" mean bond s which, at the time of purchase or sale were unrated or rated as below investment grade by any rating agency, including, but not limited to, Mood Vs bonds of Ba or lower or S&P bonds of BB or lower);

     **4.**     Any **Securities** sold exclusively outside of the United States of America or Canada;

August 7, 2023
Kevin Crowley
Page 7

5. Actual, attempted or threatened mergers, acquisitions, divestitures, tender offers, proxy contests, leveraged buyouts, going private transactions, reorganizations, capital restructuring, recapitalization, fairness opinions, spin-offs, primary or secondary offerings of **Securities** (regardless of whether the offering is a public offering or a private placement) or other efforts to raise or f anis h capital or financing for any company, corporation, enterprise or entity or disclosure requirements in connection with any of the foregoing, as well as any other investment banking activities;

6. Structured settlements; however, this exclusion shall not apply to a **Claim** arising out of or based upon the sale or servicing of the underlying product, if otherwise covered by this Policy;

7. Any **Securities** that are wholly or partially owned by any **Insured**;

8. Callable certificates of deposit and debentures; and

9. any **Securities** or investment/financial products backed by mortgages, including, but not limited to CMOs, CDOs, and CDS;

\*\*\*

The Policy provides relevant Conditions, as follows:

**SECTION XI – NOTICE OF CLAIM**

A. As a condition precedent to the obligations of the **Insurer** under this Policy, an **Insured** shall give the **Insurer** written notice of a **Claim** made against the **Insured** as soon as practicable, but in no event later than either:

1. The end of the **Certificate Period** or Extended Reporting Period, if applicable;

2. 30 days after the end of the **Policy Period**, or Extended Reporting Period, if applicable, as long as such **Claim** is first made within the final 30 days of the **Policy Period** or Extended Reporting Period or;

3. Notwithstanding the requirements of 1. and 2. above, if continuous coverage is in effect pursuant to consecutive policies issued by the **Insurer**, a **Claim** may be reported to the **Insurer** in writing, as soon as practicable, during the policy period consecutive to and immediately following this **Policy Period** without constituting a

August 7, 2023
Kevin Crowley
Page 8

violation of this provision. In such condition, the **Claim** will be deemed reported on the last day of the **Policy Period**.

**B.**     Written notice of a **Claim** shall be addressed to the **Insurer**.

**C.**     A **Claim** shall be deemed reported at the time when the **Insurer** receives written notice.

**D.**     The **Insured** shall provide the **Insurer** with copies of all documents received by the **Insured** concerning a **Claim**, including, but not limited to a summons, complaint, statement of claim or any other papers served in a civil litigation or arbitration. In addition, the **Insured** shall provide the **Insurer** with the following:

    **1.**     The name of the claimant;

    **2.**     The name of each **Insured** involved in the **Claim**;

    **3.**     A detailed description of the **Wrongful Act** or **Management Wrongful Act** giving rise to the **Claim**;

    **4.**     The **Damages** that may result from the **Claim**; and

    **5.**     The circumstances by which the **Insured** became aware of the **Claim**.

**SECTION XII – NOTICE OF A WRONGFUL ACT OR MANAGEMENT WRONGFUL ACT**

**A.**     An **Insured** may provide the **Insurer** with written notice of a **Wrongful Act** or **Management Wrongful Act** committed during the **Certificate Period** which reasonably may be expected to give rise to a **Claim** as soon as practicable after the **Wrongful Act** or **Management Wrongful Act** becomes known to the **Insured**. Such notice may not be provided after the **Certificate Period** expires, nor during any Extended Reporting Period.

**B.**     The **Insured** shall provide the **Insurer** with the following concerning any such **Wrongful Act** or **Management Wrongful Act**:

    **1.**     The name of the potential claimant;

    **2.**     The name of each **Insured** allegedly responsible for such **Wrongful Act** or **Management Wrongful Act**;

August 7, 2023
Kevin Crowley
Page 9

     **3.**     A detailed description of the fact, allegation, circumstance or situation that could result in a **Claim**;

     **4.**     The **Damages** that may result from the **Wrongful Act** or **Management Wrongful Act**;

     **5.**     The circumstances by which the **Insured** became aware of the **Wrongful Act** or **Management Wrongful Act**; and

     **6.**     The reasons for anticipating a **Claim**.

**C.**     A **Claim** arising from a **Wrongful Act** or **Management Wrongful Act** and reported in accordance with Paragraphs **A** and **B**. above shall be deemed to have been first reported when the **Insurer** receives written notice of the **Wrongful Act** or **Management Wrongful Act**.

**D.**     Such written notice of a **Wrongful Act** or **Management Wrongful Act** which reasonably may be expected to give rise to a **Claim** must be given to the **Insurer**.

***

The matter you reported does not currently meet the definition of a Claim, as defined above. However, we accept this matter as valid notice of a potential claim under the Notice of a Wrongful Act provision of the Policy. In the event you are served with a written demand or civil complaint or receive any further inquiries with regard to this matter, please notify the undersigned immediately. *Any attorney's fees and costs incurred without the consent of the insurer will be considered voluntarily incurred and fall outside of coverage under this policy.*

If a claim as defined by the policy is presented against you, MAIC reserves the right to raise coverage defenses related to the representations made in your application for insurance coverage and the reporting requirement provided in the policy.

Please note that it is MAIC's policy to send this letter, which we refer to as a "potential claim" letter, to insureds when they notify us of a potential claim. This "potential claim" letter is not an attempt to avoid any responsibilities under the Policy. Accordingly, if a claim subsequently arises out of the circumstances described above, it will be considered for purposes of evaluating insurance coverage as having been made during the Policy Period of August 1, 2022 to August 1, 2023.

Pursuant to Section **XVI** of the Policy regarding Other Insurance, if you have other valid and collectible insurance that provides coverage for this matter, this Policy shall apply as excess over any such insurance. Please advise us if you have any other applicable insurance. If you do, you

August 7, 2023
Kevin Crowley
Page 10

must promptly place any other insurer(s) on notice. We also request that you provide us with copies of your notice letter(s).

MAIC reserves the right to evaluate any written demand in this matter with respect to coverage. MAIC reserves the right to seek reimbursement of defense costs paid by MAIC that are attributable to uncovered damages or claims.

By continuing with the investigation or by undertaking any other action that MAIC or Lancer deem necessary, MAIC and Lancer do not waive any defense to coverage that may exist to this claim under the Policy or the law, whether asserted herein or not, and may assert any such defense at any time.

If you feel that any aspect of this claim has been overlooked, or if you have any additional factual material you wish for us to consider, please do not hesitate to notify the undersigned of your concerns. Lancer and MAIC will be glad to consider any further information you wish to submit.

This letter is based on the information we have received to date and is not intended as an exhaustive recitation of all of the provisions of the Policy that might apply. Lancer and MAIC specifically reserve the right to amend or supplement the positions taken in this letter based upon information not yet provided to or developed by Lancer or MAIC. All rights in connection with this loss are expressly reserved, whether asserted herein or not.

If you believe that all or part of this claim has been wrongfully denied or rejected, you may have the matter reviewed by the Pennsylvania Insurance Department. They may be contacted at:

Pennsylvania Insurance Department
1209 Strawberry Square
Harrisburg, PA  17120
1-877-881-6388 (toll free) | (717) 787-8585 (fax)
TTY/TDD: (717) 783-3898
https://www.insurance.pa.gov

Should you have any questions regarding this matter, please do not hesitate to contact me at 714-939-7300 or EMcCusker@lancerclaims.com.

Sincerely,

*Erin McCusker*

Erin McCusker
CA License 4213932
Claims Director
Lancer Claims Services
A Division of Brown & Brown Program Insurance Services

August 7, 2023
Kevin Crowley
Page 11


CA License #2B02587
Third Party Administrator for Markel American Insurance Company
P.O. Box 7048 | Orange, CA 92863
714.939.7300 (direct) | 714.978.8023 (fax)