# EXHIBIT "D"



February 26, 2024

<u>*Via* EMAIL and CERTIFIED MAIL</u>

Kevin Crowley
918 Maple Street
Conshocken, PA 19428
kcrowley@marchfwd.com

Re   Insured:                Kevin Crowley
     Insurer:                Markel American Insurance Company
     Sponsoring Company: Penn Mutual Life Insurance Company
     Policy:                 Company Sponsored Life Insurance Agents Professional Liability
     Policy Number:          MKLM7PLCA00065
     Policy Period:          August 1, 2022 to August 1, 2023
     Claimant:               Paul & Marie Friedman
     Lancer Claim No.:       619560
     Carrier Claim No.:      MXXL96790

Dear Mr. Crowley:

As you are aware, Lancer Claims Services ("Lancer") has been engaged to handle the above-captioned matter on behalf of Markel American insurance Company ("MAIC").

We are writing to supplement our prior letter of August 7, 2023, for the above referenced matter. We acknowledge receipt of the Emergency Motion for Temporary Restraining Order and Complaint filed by Marie and Paul Friedman (the "Claimants" or "Plaintiffs"), captioned *Paul and Marie Friedman v. March Fwd, LLC f/k/a MWealth Advisors and Lake Forest Bank & Trust Company, N.A. d/b/a Wintrust Life Finance* (the "Complaint") wherein they seek damages relating to a premium financed life insurance policy (the "Claim"). You have asked MAIC to provide coverage under the above referenced policy (the "Policy") for you, Andrew Babson, and March Fwd, LLC f/k/a/ MWealth Advisors. As discussed further in this letter, you, Andrew Babson, and March Fwd, LLC f/k/a MWealth Advisors are considered Insureds under the Policy to the extent discussed herein.

Based on Lancer's and MAIC's review of the Complaint, the Policy, as well as documentation and facts provided by you, Lancer and MAIC regret to inform you that MAIC must decline coverage for this Claim for you, Andrew Babson, and March Fwd LLC, f/k/a MWealth Advisors. As is explained more thoroughly herein, we have concluded that the Claim made by the above referenced Claimants is not within the scope of coverage of the Policy. Therefore, MAIC is not required to defend or indemnify you, Andrew Babson and March Fwd, LLC f/k/a MWealth Advisors as to the Claim.

Kevin Crowley
February 26, 2024
p.2


Basis of the Claim:

While this letter may refer to certain allegations made by certain parties, we recognize that those allegations are unsubstantiated at this time, and nothing in this letter is intended to suggest or imply that they have any legal or factual merit.

The conclusions of Lancer and MAIC are based on the following facts and allegations:

On July 6, 2023, you reported having received a letter from the Claimants' counsel which notes they believe the premium financing program used was unsuitable for their needs. The letter states that counsel and the Claimants are prepared to meet with you and your counsel to discuss resolving the issues. The letter states if a meeting is to happen it must include all persons with the authority to conclude a settlement that includes rescission of the policies and return of the premiums, and that documents of all involved are preserved for evidence. No demand was made at that time. We accepted this as a notice of circumstance and a Potential Claim Letter was issued on August 7, 2023, as the initial notice of circumstances did not rise to the level of a Claim as defined in the Policy.

You advised you met with the Claimants in 2021 to discuss life insurance policies. The Claimants owned a very successful business where they had a $2-3 Million dollar salary and said the value of the business was $20 Million which they were going to sell in 2 – 3 years for $150 Million. The premiums were to be paid using premium financing, which was to be arranged and handled through Succession Capital and WinTrust Bank. The reason for the policies was for the tax benefits.

The Claimants ended up purchasing a guaranteed whole life policy for each of them in October 2021. In 2022, you learned the Claimants were purchasing properties in downtown Philadelphia and were paying cash. You also learned there was some sort of issue with the Claimants' business.

In February 2023 you met with the Claimants, and they asked questions about the financing. You had the impression the Claimants' situation had changed and they were looking to get out of the policies. You attempted to provide other options for the Claimants as the policies were intended to be a long-term investment. The Claimants did not want to partake in the other options, and you did not hear anything more until you received the letter from their attorney.

You were served with an Emergency Motion for a Temporary Restraining Order (the "Motion") which Claimants filed against Lake Forest Bank dba WinTrust to stop WinTrust from executing a letter of credit which would result in liquidation. The Motion includes as an exhibit a copy of a Complaint that was filed in October against Wintrust and March Fwd, LLC f/k/a MWealth Advisors ("March Fwd, LLC"). You confirmed that at the time of service for the Motion you had not been served with the Complaint.

The Complaint alleges you and Andrew Babson ("Babson"), as principals of March Fwd, LLC, induced the Claimants to purchase an unnecessary and unneeded life insurance policy with exorbitant premiums. In order to subsidize the premium payments, the Claimants allege you and Babson advised them to seek premium financing services from WinTrust Life Finance. Babson, as the trustee of the

Kevin Crowley
February 26, 2024
p.3

Family trusts, executed a master promissory note on October 28, 2021, with WinTrust for a variable rate loan of $809,499. The Claimants were listed as the guarantors.

The Complaint alleges Violation of Pennsylvania Unfair Trade and Practices Consumer Protection Law; Fraudulent Misrepresentation; Negligent Misrepresentation; Breach of Fiduciary Duty; and Professional Negligence against March Forward, LLC and seeks damages in excess of $50,000.

Claimants have now filed an Amended Complaint, wherein they allege additional facts against WinTrust. No additional allegations or new facts are made against you, Babson or March Fwd, LLC.

<u>The MAIC Policy</u>

The Policy is issued to Kevin Crowley by MAIC and is effective for the Policy Period of August 1, 2022 to August 1, 2023. When applicable, the Policy provides per Claim Limits of Liability of $1,000,000 for each Insured subject to an aggregate limit of $1,000,000. The Policy has a per Claim $1,500 deductible. Under no circumstances shall MAIC be responsible for any amounts in excess of the Limit of Liability.

**<u>Company Position: Full Declination of Coverage</u>**

MAIC recognizes the allegations in the Claim are unsubstantiated at this time, and nothing in this letter is intended to suggest they have any legal or factual merit. However, there are provisions of the Policy which preclude coverage for the Claim. Lancer and MAIC reserve the right to assert any provision of the Policy or the law that precludes or limits coverage.

We direct your attention to the Insuring Agreement of the Policy, which reads, in relevant part, as follows:

**SECTION I – INSURING AGREEMENTS**

    A.    **Professional Liability**

> The **Insurer** shall pay, on behalf of an **Insured**, **Damages** which an **Insured** becomes legally obligated to pay because of a **Claim** that is both made against an **Insured** and reported to the **Insurer** in writing during the **Certificate Period** (as to an **Agent** or **Registered Representative**), the **Policy Period** (as to the **Broker-Dealer**),or as allowed by Section **XI** — Notice Of Claim below, or during an Extended Reporting Period, if applicable, for a **Wrongful Act** or **Interrelated Wrongful Act** committed solely in the rendering of or failing to render **Professional Services** by an **Insured**, provided:
>
>     1.    Such **Wrongful Act** or any **Interrelated Wrongful Act** occurred on or after the **Retroactive Date** and before the end of the

Kevin Crowley
February 26, 2024
p.4

        **Certificate Period** (as to an **Agent** or **Registered Representative**), the **Policy Period** (as to the **Broker-Dealer**); and

    **2.**    As of the inception date of this Policy as shown in the Master Policy Declarations, or the effective date of the **Agent**'s enrollment for coverage hereunder as shown in the Certificate Of Insurance, no **Insured** had knowledge or reasonable basis upon which to anticipate that the **Wrongful Act** or any **Interrelated Wrongful Act** could result in a **Claim**.

The Policy provides the following relevant definitions:

**SECTION V – DEFINITIONS**

For purposes of this Policy, the terms in bold type shall have special meanings that are designated below. All other terms shall have those meanings commonly understood by professionals who are engaged in the business of insurance.

    **A.**    **Agent** means an **Insured** person who:

        **1.**    Maintains an agent or field manager contract with the **Sponsoring Company;**

        **2.**    Has elected to enroll for coverage under this Policy, either at the inception date of the **Policy Period** or prior to the expiration date of the **Policy Period**, and whose enrollment is on file with the **Sponsoring Company**;

        **3.**    Is shown as such in a Certificate Of Insurance;

        **4.**    Has paid the applicable premium; and

        **5.**    Is licensed by all necessary federal, state or local governmental authorities to render **Professional Services** where both the **Agent** and client are located.

    An **Agent** shall not be provided with coverage under Section I — Insuring Agreement **B.** Managing Agents Management Liability, unless the **Agent** is also a **Managing Agent**.

    **Agent** shall also mean:

        **6.**    An individual who was an **Agent** of the **Sponsoring Company** and who retired from the business of providing **Professional Services** prior to July 31, 2011;

Kevin Crowley
February 26, 2024
p.5

     **7.**     An individual who was an **Agent** of the **Sponsoring Company** and who because of a disability could no longer provide **Professional Services** prior to July 31, 2011; and

     **8.**     The estate of an **Agent** of the **Sponsoring Company** who died prior to July 31, 2011; Provided that with respect to Subsections **6.**, **7.** and **8.**, above, such individual was enrolled in the Penn Mutual Life Insurance Company sponsored errors and omissions insurance program at the time of his/her retirement, disability or death, is otherwise covered under the Policy for a **Claim** and if the actual or alleged **Wrongful Acts** or **Interrelated Wrongful Acts** occurred prior to such retirement, disability or death;

     **9.**     An individual who was an **Agent** as of the effective date of this Policy whose contract terminated with the **Sponsoring Company** during the **Policy Period**, but only for Professional Services rendered under the definition of **Professional Services** 1.a and h.

***

**K.**     **Insured** means:

     **1.**     An **Agent** shown as such in a Certificate Of Insurance;

     **2.**     A **Managing Agent** shown as such in a Certificate Of Insurance;

     **3.**     A **Registered Representative** shown as such in a Certificate Of Insurance;

     **4.**     A corporation, partnership or other business entity owned by and in which an **Agent, Managing Agent** or **Registered Representative** has an ownership interest, or in which an **Agent, Managing Agent** or **Registered Representative** is an employee, but solely with respect to the liability of such organization as it arises out of an **Agent, Managing Agent** or **Registered Representative** rendering of or failing to render **Professional Services**; Coverage hereunder shall not be afforded for any actual or alleged **Wrongful Act** or **Management Wrongful Act** of such organization, but shall only apply to a **Claim** arising out of the actual or alleged **Wrongful Act** of an **Agent** or **Registered Representative** or the **Management Wrongful Act** of a **Managing Agent**;

     **5.**     A person acting on behalf of an **Agent**, **Managing Agent** or **Registered Representative**, who was or is a partner, officer,

Kevin Crowley
February 26, 2024
p.6

      director, stockholder or an employee of an **Agent**, **Managing Agent** or **Registered Representative**, or the business entity of an **Agent**, **Managing Agent** or **Registered Representative**, provided such person is not a party to an agent, general agent or registered representative contract with any insurance company or broker-dealer and only with respect to the **Professional Services** of an **Agent**, **Managing Agent** or **Registered Representative**;

***

**P.**    **Professional Services** means:

    **1.**    The solicitation, sale or servicing of the following:

        **a.**    Life insurance, accident and health insurance, long-term care insurance, workers' compensation insurance as part of a 24-hour accident and health insurance product, disability income insurance, fixed annuities or indexed annuities;

        **b.**    Variable insurance products, including, but not limited to, variable annuities, flexible and scheduled premium annuities and variable life insurance;

        **c.**    Mutual funds that are registered with the SEC and authorized or approved by and distributed through a broker or dealer that is a member of FINRA;

        **d.**    **Securities** (other than variable annuities, variable life insurance and mutual funds) that are authorized or approved by the **Broker/Dealer** subsidiary of the **Sponsoring Company** or that are processed through the **Broker/Dealer** subsidiary of the **Sponsoring Company**.

    **2.**    The solicitation, sale or administration of employee benefit plans, other than Multiple Employer Welfare Arrangements (as defined by the Employee Retirement Income Security Act of 1974 and any amendments thereto), including group plans, group or ordinary pension or profit sharing plans, retirement annuities, and life, accident and health or disability plans.

    **3.**    Rendering services as a notary public.

    **4.**    Financial planning, but only if performed directly in conjunction with the sale, solicitation or servicing of the products referenced in Paragraph **P.1.** and **P. 2.** above.

Kevin Crowley
February 26, 2024
p.7

***

    **U.**    **Wrongful Act** means a negligent act or omission, including a **Personal Injury Act,** committed by an **Insured** in the rendering of or failing to render **Professional Services** to a client.

The Policy definition of Insured includes the Agent; the business entity owned by and in which the Agent has an ownership interest or is an employee of the business entity; and a person acting on behalf of the Agent who is a partner of the Agent, but solely with respect to the liability of such business or partner performing or failing to render Professional Services on behalf of the Agent. The Policy defines Professional Services to includes the solicitation, sale or servicing of life insurance or other products and services as described in the above definition.

Here, you, Kevin Crowley, are an Agent as you elected to enroll for coverage under this Policy, either at the inception date of the Policy Period or prior to the expiration date of the Policy Period, and whose enrollment is on file with the Sponsoring Company, and therefore meet the definition of an Insured under the Policy to the extent you were performing Professional Services as defined. Your business entity, of which you are an owner and partner, is March Fwd, LLC and your business partner is Babson. As such, both March Fwd, LLC and Babson appear to qualify as Insureds under the Policy, but only with respect to any liability of the business or partner in performing or failing to render Professional Services as defined by the Policy.

The Complaint alleges that you and Babson committed Wrongful Acts as employees of March Fwd, LLC. The Wrongful Acts alleged in the Complaint arise in part from allegations that Babson, as signed a promissory note for a premium financing loan on behalf of the Claimants. The definition of Professional Services includes the solicitation, sale or servicing of life insurance policies, however, as discussed below, Exclusion U in the Policy precludes coverage for promissory notes. The promissory note signed by Babson related to the premium financing loan for the life insurance policy. As such, the signing of the promissory note does not constitute Professional Services under the Policy. Accordingly, any Insured – Kevin Crowley, Babson or March Fwd, LLC – involved in the signing of the promissory note would not be considered an Insured under the Policy in relation to the signing of the promissory note.

To the extent that you, as an Agent, were not performing Professional Services, or that Babson and March Fwd, LLC are not Insureds or were not performing Professional Services as defined in the Policy, MAIC reserves the right to decline to defend and indemnify you as to the Claim.

The Policy contains the following Exclusions:

**SECTION VI– EXCLUSIONS**

This Policy shall not apply to, and the **Insurer** shall pay neither **Damages** nor **Claim Expenses** for, any **Claim**:

Kevin Crowley
February 26, 2024
p.8

***

    **U.**    Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:

        **1.**    Promissory notes, viatical or life settlements involving terminally ill clients in accordance with the definition of "terminally ill" by the relevant state, or any **Securities** backed by promissory notes or such viatical settlements;

Exclusion U precludes coverage for any Claim arising from or in any way involving promissory notes. The Complaint arises in part from allegations that Babson signed a promissory note for a premium financing loan, with the Claimants as guarantors of the loan, and that this was unnecessary and unneeded. As the Claim arises out of, is based upon or in consequence of, directly or indirectly resulting from or in any way involves promissory notes, Exclusion U applies to this matter as to all Insureds. Accordingly, Exclusion U applies and MAIC declines to defend and to indemnify you, Andrew Babson and March Fwd, LLC f/k/a MWealth Advisors as to the Claim.

**Other Coverage Issues:**

Although MAIC and Lancer believe the above stated denial of coverage under the Policy to be conclusive as to coverage, we believe it is prudent to draw your attention to other coverage issues presented by the Claims.

The Policy provides the following relevant definitions:

**SECTION V – DEFINITIONS**

For purposes of this Policy, the terms in bold type shall have special meanings that are designated below. All other terms shall have those meanings commonly understood by professionals who are engaged in the business of insurance.

***

    **G.**    **Claim Expenses** means reasonable and necessary amounts incurred by the **Insurer**, or by the **Insured** with the prior written consent of the **Insurer**, in the defense of a **Claim** that is covered under this Policy, including attorneys' fees, costs of investigation, court or arbitration costs and premiums for appeal, attachment or similar bonds. The **Insurer**, however, is not required to provide such bonds. **Claim Expenses** do not include the wages, salaries, fees or costs of the directors, officers, employees, representatives, in-house counsel, agents or servants of any Insured.

Claim Expenses is defined as reasonable and necessary amounts incurred in the defense of a Claim that is covered under this Policy. You have retained counsel. As this matter is not covered under the

Kevin Crowley
February 26, 2024
p.9

policy, the amounts incurred for your counsel do not fall within the scope of the definition of Claim Expenses. Accordingly, MAIC will not be reimbursing any expenses incurred.

> H. **Damages** means monetary judgments, settlements or awards resulting from a **Claim**. **Damages** do not include the following:
>
> > 1. Taxes, fines or penalties, unless incurred by a claimant and made part of a **Claim** against an **Insured**;
> >
> > 2. Punitive or exemplary damages;
> >
> > 3. The multiplied portion of a multiplied damage award;
> >
> > 4. The return, restitution, reduction, compromise or refund of commissions, fees or charges;
> >
> > 5. Costs incurred as a result of non-monetary, declaratory or injunctive relief;
> >
> > 6. Any matters that are deemed uninsurable under the law; and
> >
> > 7. Claim Expenses.

To the extent that any Damages awarded fall outside the scope of the Definition of Damages in the Policy, MAIC reserves the right to refuse to indemnify you as to the Claim.

*** 

The Policy also contains the following Exclusions:

**SECTION VI – EXCLUSIONS**

This Policy shall not apply to, and the Insurer shall pay neither **Damages** nor **Claim Expenses** for, any **Claim**:

***

> D. Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any:
>
> > 1. Actual or alleged dishonest, purposeful, malicious, fraudulent or criminal act or willful violation of any federal, state or local statute, by, at the direction of or with the knowledge of any **Insured**; or

Kevin Crowley
February 26, 2024
p.10

> **2.** Gaining of profit, remuneration or monetary advantage to which an **Insured** is not legally entitled.
>
> However, the **Insurer** shall continue to defend a **Claim** alleging any of the foregoing conduct until there is a judgment, final adjudication, adverse admission or finding of fact against any Insured as to such conduct, at which time the **Insured** shall reimburse the Insurer for the costs of defending the **Claim**. Moreover, an actual or alleged dishonest, purposeful, malicious, fraudulent or criminal act or willful violation of any federal, state or local statute of one **Agent** or **Managing Agent** will not be imputed to another **Agent** or **Managing Agent**;

Exclusion D precludes coverage for Claims arising from, based upon or in any way involving any actual or alleged dishonest or fraudulent acts, subject to a judgment or final adjudication. The Complaint alleges Causes of Action of Fraudulent Misrepresentation and Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. To the extent that Exclusion D applies, MAIC reserves the right to refuse to defend or to indemnify you as to the Claim.

*** 

> **Q.** Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving any actual or alleged guarantee, promise or warranty as to interest rates, market values, earnings, future values or future premiums or payments in connection with variable life insurance, variable annuities, scheduled premium annuities, mutual fads or **Securities**;

Exclusion Q precludes coverage for Claims arising from, based upon or in any way involving any actual of alleged guarantees, promises or warranties as to future values. The Complaint alleges that an Insured made material misrepresentations as to the future value of their business, including that it would grow to over $120M by the end of 2030. To the extent that Exclusions Q applies, MAIC reserves the right to refuse to defend or to indemnify you as to the Claim.

By continuing with the investigation or by undertaking any other action that MAIC or Lancer deem necessary, MAIC and Lancer do not waive any defense to coverage that may exist as to the Claim under the Policy or the law, whether asserted herein or not. MAIC and Lancer do not waive any defense to coverage not asserted herein and may assert any such defense at any time.

If you feel that any aspect of this Claim has been overlooked, or if you have any additional factual material you wish for us to consider, please do not hesitate to notify the undersigned of your concerns. Lancer and MAIC will be glad to consider any further information you wish to submit.

Kevin Crowley
February 26, 2024
p.11


This letter is based on information we have received to date and is not intended as an exhaustive recitation of all provisions of the Policy that might apply. Lancer and MAIC do not waive any other rights or defenses to coverage that may be applicable under the Policy, whether or not such right or defenses are specifically set forth herein. Lancer and MAIC specifically reserve the right to amend or supplement the positions taken in this letter based upon information not yet provided to or developed by Lancer or MAIC. All rights in connection with this loss are expressly reserved, whether asserted herein or not.

If you believe that all or part of this claim has been wrongfully denied or rejected, you may have the matter reviewed by the Pennsylvania Insurance Department. They may be contacted at:

Pennsylvania Insurance Department
1326 Strawberry Square
Harrisburg, PA 17120
(877) 881-6388 (toll free)
https://www.insurance.pa.gov

Meanwhile, if you have any questions or comments regarding this matter, please feel free to contact Erin McCusker at (714) 939-7300 or EMcCusker@lancerclaims.com.

Sincerely,

*Michele Cook*

Michele Cook
Senior Director-Coverage Team Lead
Lancer Claim Services
A Division of Brown & Brown Program Insurance Services, Inc.
Third Party Administration for Markel American Insurance Company
PO Box 7048 | Orange, CA 92863
(714) 939-7376

cc:     Andrew Babson
        ABabson@marchfwd.com