IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARKEL AMERICAN INSURANCE COMPANY,** : | NO: 2:24-CV-01438 |
| : | |
| : | **JURY TRIAL DEMANDED** |
| *Plaintiff* : | |
| : | |
| v. : | |
| : | |
| **MARCH FWD, LLC f/k/a MWEALTH ADVISORS,** : | |
| : | |
| : | |
| *Defendant.* : | |
| : | |

## MARCH FWD, LLC f/k/a MWEALTH ADVISORS ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT FILED BY MARKEL AMERICAN INSURANCE COMPANY

Defendant March Fwd, LLC f/k/a MWealth Advisors ("MWealth"), by and through undersigned counsel, files the present Answer to the Complaint for Declaratory Judgment ("Complaint") filed by Plaintiff Markel American Insurance Company ("MAIC"). Except where otherwise specified herein, all allegations are denied under Rule 8(b).

1. Denied as stated. The conduct alleged[1] in the Underlying Action falls squarely within the professional liability master policy (the "Policy") that MAIC issued to MWealth. *See* Policy No. MKLM7PLCA00065, attached hereto as **Exhibit A**. It is almost farcical for MAIC to suggest that MWealth' professional liability insurance does not cover the Underlying Action, where one of the claims in such action is literally titled "**Claim of Professional Negligence**." *See* Amended Complaint in Underlying Action, attached hereto as **Exhibit B**, at Count VI. While the claims in the Underlying Action are meritless, the allegations raised therein by MWealth's former clients relating to the provision of professional services, and this falls squarely within the Policy terms.

---

[1] MWealth does not concede the accuracy of any of the allegations in the Underlying Action.

2. Denied. MAIC has a duty to defend under the Policy and, in the event that MWealth is ever found liable in the Underlying Action,[2] MAIC has a duty to indemnify its insured.

3. Admitted upon information and belief.

4. Admitted that MWealth is a Pennsylvania limited liability company with a registered office at that address.

5. MWealth admits that the plaintiffs in the Underlying Action (the "Friedmans") have made allegations of that nature, although MWealth denies that they have any merit.

6. Admitted.

7. Admitted.

8. Admitted.

9. Denied as stated. MWealth first notes that the allegations made in the Underlying Action have yet to be proven, and many of them are patently false. Secondly, even if the Friedmans averments are taken as true, it is expressly denied that this "scheme was effected through a series of acts culminating in MWealth's principal, Andrew Babson ("Mr. Babson"), personally executing a Master Promissory Note (the "Master Promissory Note") which secured premium financing for the life insurance policies." This alleged Master Promissory Note is a minute aspect of the Friedmans' complaint. Indeed, the phrase "Master Promissory Note" ***only appears in a single paragraph in such complaint***, and is not even attached as an exhibit. *See* Ex. B, ¶ 35. MAIC ignores the 94 other paragraphs of clearly-covered allegations to shine a spotlight on a total sideshow issue.

Further, even if Mr. Babson signed the Master Promissory Note, there are still important questions of facts and law to determine in what ***capacity*** he was acting in when he engaged in

---

[2] MWealth denies that any liability should be imposed for its conduct in the Underlying Action.

such actions. For instance, **even the Friedmans** allege that this action was **not** taken as an agent of MWealth, but as "the trustee of the Friedman Family Trusts[.]" There are many allegations in the Friedmans' complaint that, at a minimum, implicate MAIC's duty to defend. It is patently unreasonable for MAIC to disclaim not just coverage, but also the duty to defend, for a single allegation against an insured's principal relating to his alleged conduct in an entirely distinct role.

This Master Promissory Note that the Friedmans executed was but one of innumerable ways that they could have financed their life insurance premiums. While the Friedmans ultimately decided that this specific financing option made the most sense for their individual circumstances, their claims against MWealth would be virtually identical if they had used any other financing option. In short, this Master Promissory Note that MAIC hangs its hat on is a total distraction that could be excised from the complaint without a material change to the Friedmans' claims.

10. Denied as stated. The Friedmans' allegations are unproven, and many are categorically false. For instance, they met Mr. Babson earlier than 2020. However, it is admitted that MWealth provided professional services to the Friedmans, which is exactly why MAIC has an obligation to defend MWealth under its professional liability Policy.

11. Denied as stated. MWealth discussed a range of potential options with the Friedmans, who ultimately made a decision based on an informed review of the relevant materials and their own individual circumstances.

12. Denied. The Friedmans were the ones that asked Mr. Babson to be the trustee.

13. Denied as stated. MWealth discussed a range of potential options with the Friedmans, who ultimately made a decision based on an informed review of the relevant materials and their own individual circumstances.

14. Denied as stated. While the Amended Complaint alleges this, this is categorically false. The Friedmans developed the valuation of their business, and MWealth had nothing to do with this valuation.

15. Denied as stated. While the Amended Complaint alleges this, this is categorically false. The Friedmans developed the valuation of their business, and MWealth had nothing to do with this valuation.

16. Admitted.

17. Admitted.

18. Denied as stated. While this is alleged in the Friedmans' complaint, this averment is false.

19. Denied as stated. While Mr. Babson did sign such a document, it is yet to be determined what role he was acting in when he did so. By way of further response, the Friedmans also signed the Master Promissory Note, and there was nothing untoward or actionable about this document. It is a minor component of the Friedmans' complaint; indeed, it is not even attached to such complaint.

20. Denied as stated. While that has been asserted by the Friedmans, such assertions are false.

21. Denied. *See*, *supra*, ¶¶ 9 and 19.

22. It is admitted that the parties exchanged such correspondence, and that the version attached to MAIC's Complaint appears true and correct.

23. It is admitted that the parties exchanged such correspondence, and that the version attached to MAIC's Complaint appears true and correct.

24. Admitted.

25. Admitted. By way of further response, MAIC refusal to tender an unconditional defense in this matter was (and is) in bad faith.

26. Denied as stated. It is admitted that MAIC disclaimed coverage for this reason, but its interpretation of the Policy and Underlying Action is wrong. The Master Promissory Note is a minor sideshow in the Underlying Action, and there are many disputes of facts and law surrounding that document. MAIC had no basis to disclaim coverage or the duty to defend on this basis.

27. Admitted. By way of further response, see ¶¶ 25-26, *supra*. Further, it is in bad faith for MAIC to disclaim coverage here, as well as to refuse to provide MWealth with a defense.

28. Admitted that such a Policy exists and that a true and correct version appears to be attached to MAIC's Complaint. By way of further response, MWealth has attached a true and correct version of such Policy to this Answer as well.

29. Denied as stated. While such language is found in the Policy, it is inapplicable here.

## COUNT I – DECLARATORY JUDGMENT

30. This is an incorporation paragraph to which no response is required.

31. Denied as stated. The claims in the Friedmans' complaint do not arise out of the Master Promissory Note; indeed, this is why such a document is ***not even attached to their complaint.*** The life insurance premiums could have been financed through any other method and

5

it would not meaningfully change the nature of the Friedmans' claims. In fact, because this Master Promissory Note was so immaterial as to not be attached to the Friedmans' complaint, that also means that **MAIC has likely never even seen this document**. It is clearly in bad faith for MAIC to base their denial of coverage entirely on a document that it has never even seen, let alone resolved all outstanding questions of facts and law regarding.

32. Denied. MWealth generally denies the Friedmans' allegations as to this "scheme," as well as MAIC's description of such averments.

33. Denied. MWealth generally denies the Friedmans' allegations as to this "scheme," as well as MAIC's description of such averments.

34. Denied. MWealth generally denies the Friedmans' allegations as to this "scheme," as well as MAIC's description of such averments. By way of further response, the Friedmans could have obtained financing via innumerable other methods, and their claims would not meaningfully change if they had done so.

35. Denied. The Friedmans had many ways to finance their endeavors, and the Master Promissory Note is a sideshow issue to MWealth's overall dispute with the Friedmans.

36. Denied. The Friedmans had many ways to finance their endeavors, and the Master Promissory Note is a sideshow issue to MWealth's overall dispute with the Friedmans. Plenty of allegations in the Friedmans' complaint (for instance, the supposedly inflated valuation of their business) have absolutely nothing to do with the Master Promissory Note. Indeed, the Master Promissory Note is not even mentioned in this story until Paragraph 35 of the Friedmans' complaint, after a laundry list of unrelated grievances about MWealth's professional services.

37. Denied. MWealth generally denies the Friedmans' allegations as to this "scheme," as well as MAIC's description of such averments.

38. Denied. MWealth generally denies the Friedmans' allegations as to this "scheme," as well as MAIC's description of such averments. No exclusion applies, and it is bad faith for MAIC disclaim coverage here.

39. Denied. This provision is inapplicable and the alleged Master Promissory Note is a very small component of the Underlying Action.

40. Denied. MAIC has an obligation to provide MWealth with a defense and, in the unlikely event that MWealth is ever found liable, MAIC has an obligation to indemnify MWealth.

41. Denied. MAIC has an obligation to provide MWealth with a defense and, in the unlikely event that MWealth is ever found liable, MAIC has an obligation to indemnify MWealth.

42. Denied. MAIC has an obligation to provide MWealth with a defense and, in the unlikely event that MWealth is ever found liable, MAIC has an obligation to indemnify MWealth.

**WHEREFORE**, MWealth respectfully requests that the Court declare that MAIC has a duty to defend MWealth and its principals, agents, and employees in the Underlying Action and, if liability is ever imposed, to indemnify MWealth under the Policy.

## AFFIRMATIVE DEFENSES

43. MAIC's Complaint fails to state a claim for which relief can be granted.

44. MAIC's Complaint, and each purported claim for relief alleged therein, is barred, in whole or in part, by the terms of the Policy.

45. MAIC's Complaint is barred, in whole or in part, by MAIC's acts and/or failures to act.

46. MAIC's Complaint is barred, in whole or in part, by the doctrine of laches.

47. MAIC's Complaint is barred, in whole or in part, by the doctrine of unclean hands.

48. MAIC's Complaint is barred by the doctrine of waiver.

49. MAIC's Complaint is barred, in whole or in part, by the doctrine of estoppel.

50. MAIC's Complaint is barred because MWealth complied with all contractual, statutory, or other duties that it owed.

**WHEREFORE**, having fully answered MAIC's Complaint, MWealth asks that the Court reject MAIC's request for a declaratory judgment in this matter.

### COUNTERCLAIM I
### BAD FAITH CLAIM PURSUANT TO 42 PA.C.S.A. § 8371
### MWEALTH v. MAIC

51. MWealth incorporates the foregoing paragraphs as if set forth fully herein.

52. MAIC did not have a reasonable basis for refusing to undertake the duty to defend MWealth in the Underlying Action.

53. MAIC accepted MWealth's premiums for a professional liability Policy, which led MWealth to believe that MAIC would indemnify and defend it in the event that MWealth was sued for the provision of professional services.

54. MAIC's acceptance of premiums and subsequent refusal to defend or indemnify MWealth under such circumstances is outrageous.

55. MAIC knew of and/or recklessly disregarded its lack of reasonable basis in denying its insured's claim.

56. Indeed, upon information and belief, **MAIC has never even seen the document that is the sole basis for its denial of coverage.**

57. MAIC failed to properly administer and/or investigate the claim to the detriment of its insured.

58. MAIC unreasonably delayed its provision of a defense in the Underlying Action.

59. As a result of MAIC's bad faith conduct, MWealth has sustained significant damages, including attorney's fees, costs, and the potential loss of strategic momentum in the Underlying Action.

**WHEREFORE**, MWealth respectfully requests judgment in its favor and against MAIC, in an amount in excess of $150,000, to include all compensatory damages, fees, costs, punitive damages, and any other relief deemed just and equitable.

### COUNTERCLAIM II
### BREACH OF CONTRACT
### MWEALTH v. MAIC

60. MWealth incorporates the foregoing paragraphs as if set forth fully herein.

61. MWealth had a contract with MAIC, namely the Policy.

62. MWealth fully performed under the Policy, notably the remittance of premiums.

63. In exchange for these premiums, MAIC was supposed to defend and indemnify MWealth from any claims arising out of the provision of its professional services.

64. MAIC has failed to do so abide by its contractual duties, in violation of the Policy.

65. MWealth has suffered damages from such breach.

**WHEREFORE**, MWealth respectfully requests judgment in its favor and against MAIC to include all compensatory damages, interest, and any other relief deemed just and equitable.

## COUNTERCLAIM III
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
## <u>MWEALTH v. MAIC</u>

66. MWealth incorporates the foregoing paragraphs as if set forth fully herein.

67. All contracts in Pennsylvania carry with them a duty of good faith and fair dealing.

68. MAIC has breached this duty by contracting with MWealth whilst knowing that it would later disclaim coverage on baseless grounds.

69. MWealth has been harmed by this breach, because it assumed when obtaining the Policy from MAIC, that MAIC would honor such Policy if covered claims arose.

70. MWealth has itself abided by the duty of good faith and fair dealing in contracting with MAIC.

71. MAIC is under an absolute duty to honor the terms of its insurance contract, which it drafted.

72. Any ambiguities in the Policy must be construed against MAIC.

73. In unreasonably denying the insured's claim and in unreasonably construing the terms of the Policy contrary to the reasonable expectations of the insured, MAIC failed to perform in accordance with the terms of its insurance contract.

74. MWealth has been harmed by this breach, as it has (in good faith) paid premiums to MAIC based on the Policy.

**WHEREFORE**, MWealth respectfully requests judgment in its favor and against MAIC, in an amount in excess of $150,000, to include all compensatory damages, fees, costs, punitive damages, and any other relief deemed just and equitable.

## COUNTERCLAIM IV
## REQUEST FOR DECLARATORY JUDGMENT
## <u>MWEALTH v. MAIC</u>

75. MWealth incorporates the foregoing paragraphs as if set forth fully herein.

76. The current controversy over the availability of insurance coverage and compliance with the approved provisions of the Policy at issue is ripe for disposition via a declaratory judgment action.

77. Despite agreeing to provide MWealth with a defense and indemnification in the Policy, MAIC has refused to do so.

**WHEREFORE,** MWealth requests judgment in its favor and against MAIC declaring that:

    a) MAIC is ordered to pay for any judgment that arises out of the Underlying Action;

    b) MAIC has a duty to defend MWealth in the Underlying Action;

    c) MWealth is entitled to attorneys' fees and costs for prosecuting this action;

    d) MWealth is entitled to any such other and further relief as the Court may deem just and proper under the circumstances.

**BOCHETTO & LENTZ, P.C.**

By: */s/ Ryan T. Kirk*
_____
Gavin P. Lentz, Esquire (53609)
Ryan T. Kirk, Esquire (329492)
1524 Locust Street
Philadelphia, PA 19102
glentz@bochettoandlentz.com
rkirk@bochettoandlentz.com
*Attorneys for Defendant*

Date: August 23, 2024

## **CERTIFICATE OF SERVICE**

I, Ryan T. Kirk, Esquire, hereby certify that a true and correct copy of the forgoing Answer to the Complaint for Declaratory Judgment was filed electronically through this Court's ECF System and is available for viewing and downloading from this Court's ECF System. I further certify that an electronic copy of the foregoing was served upon all counsel of record through this Court's ECF System.

**BOCHETTO & LENTZ, P.C.**

*/s/ Ryan T. Kirk*
By: _____
Gavin P. Lentz, Esquire (53609)
Ryan T. Kirk, Esquire (329492)
1524 Locust Street
Philadelphia, PA 19102
glentz@bochettoandlentz.com
rkirk@bochettoandlentz.com
*Attorneys for Defendant*

Date: August 23, 2024