**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY | Civil Action No. 2:24-cv-01438 |
| Plaintiff, | |
| v. | |
| MARCH FWD, LLC f/k/a MWEALTH ADVISORS, | |
| Defendant. | |

**PLAINTIFF / COUNTERCLAIM DEFENDANT MARKEL AMERICAN
INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
<u>FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)</u>**

**MCANGUS GOUDELOCK & COURIE, LLC**
Eric A. Fitzgerald, Esq.
Joseph G. Grady, Esq.
PA Identification Nos. 72590, 322874
Mailing Address: P.O. Box 12519
Columbia, SC 29211
2000 Market Street, Suite 2850
Philadelphia, PA 19103
T: (484) 406-4334 / F: (215) 501-5374
eric.fitzgerald@mgclaw.com
joe.grady@mgclaw.com
*Attorneys for Plaintiff / Counterclaim Defendant
Markel American Insurance Company*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………….... ii

INTRODUCTION …………………………………………………………………1

PROCEDURAL AND FACTUAL BACKGROUND …………………………………..4

LEGAL STANDARDS ……………………………………………………………....7

LEGAL ARGUMENT ……………………………………………………………..9

     A.    MAIC Does Not Have a Duty to Defend MWealth Because the Allegations in the Underlying Complaint All Fall Within an Applicable Exclusion in the MAIC Policy. …………………………………………………………………………9

     B.    A Judicial Determination of No Duty to Defend Resolves all Potential Indemnity Claims and MWealth's Contractual Counterclaims. …………………………………………………………………………12

     C.    The Court Should Dismiss MWealth's Bad Faith Counterclaim Because MAIC had a Reasonable Basis to Deny Coverage and it is Providing a Defense Under a Reservation of Rights Pending this Court's Order on Duty to Defend. …………………………………………………………………………13

CONCLUSION …………………………………………………………………...14

**TABLE OF AUTHORITIES**

**STATE COURT CASES**                                                                 **PAGE**

401 Fourth St., Inc. v. Investors Ins. Group,
879 A.2d 166 (Pa. 2005)…………………………………………………………………7-8

Masters v. Celina Mut. Ins. Co.,
224 A.2d 774 (Pa. Super. 1966)……………………………………………………...7-8

Pa. Nat'l Mut. Cas. Ins. Co. v. St. John,
106 A.3d 1 (Pa. 2014)……………………………………………………………………8

Lititz Mut. Ins. Co. v. Steely,
785 A.2d 975 (Pa. 2001)…………………………………………………………………8

Galvin v. Occidental Life Ins. Co. of Cal.,
211 A.2d 120 (Pa. Super. 1965)…………………………………………………………8

Wolfe v. Ross,
115 A.3d 880 (Pa. Super. 2015)………………………………………………….…….8-9

Kvaerner Metals Div. Of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.,
908 A.2d 888 (Pa. 2006)………………………………………………………………..12-13

Rancosky v. Wash. Nat'l Ins. Co.,
170 A.3d 364 (Pa. 2017)…………………………………………………………………13

Terletsky v. Prudential Property & Cas. Ins. Co.,
649 A.2d 680 (Pa. Super. 1994)…………………………………………………………13


**FEDERAL CASES**

Cont'l Cas. Co. v. Adams,
2003 U.S. Dist. LEXIS 16434 (M.D. Pa. Sept. 12, 2003)……………………………… 3, 10-12

Leithbridge Co. v Greenwich Ins. Co.,
464 F. Supp. 3d 734 (E.D. Pa. 2020)……………………………………………………4

Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,
998 F.2d 1192 (3d Cir. 1993)……………………………………………………………4

Zimmerman v. Corbett,
873 F.3d 414 (3d Cir. 2017)……………………………………………………………..7

Harleysville Worcester Ins. Co. v. Gateway Petroleum Tech., Inc.,
2021 U.S. Dist. LEXIS 189424 (E.D. Pa. September 30, 2021)………………………………....8

Post v. St. Paul Travelers Ins. Co.,
691 F.3d 500 (3d Cir. 2012)……………………………………………………………….…..8

Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.,
539 F. Supp. 3d 409 (E.D. Pa. 2021)……………………………………………………………..8

Meyer v. CUNA Mut. Ins. Soc.,
648 F.3d 154 (3d Cir. 2011)……………………………………………………………….…..8

Sikirica v. Nationwide Ins. Co.,
416 F.3d 214 (3d Cir. 2005)………………………………………………………………....8-9

State Farm Fire & Cas. Co. v. Estate of Mehlman,
589 F.3d 105 (3d Cir. 2009)…………………………………………………………………....9

Pacific Indem. Co. v. Linn,
766 F.2d 754 (3d Cir. 1985)…………………………………………………………………....9

Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.,
939 F.3d 243 (3d Cir. 2019)………………………………………………………………..10

Lupu v Loan City, LLC,
903 F.3d 382 (3d Cir. 2018)………………………………………………………………..10

Penn Nat'l Ins. v. HNI Corp.,
482 F. Supp. 2d 568 (M.D. Pa. 2007)…………………………………………………….…..10

Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,
193 F.3d 742 (3d Cir. 1999)………………………………………………………………....10, 14

Yocum v. St. Paul Mercury Ins. Co.,
2010 U.S. Dist. LEXIS 52814 (E.D. Ark. May 27, 2010)…………………………………...11-12

Maui Land & Pineapple Co. v. Liberty Ins. Underwriters Inc.,
2018 U.S. Dist. LEXIS 56949 (D. Haw. April 3, 2018)…………………………………………..11-12

Travelers Property Casualty Co. Of America v. Chubb Custom Insurance Co.,
864 F. Supp. 2d 301 (E.D. Pa. 2012)………………………………………………………13

Bhd. Mut. Ins. Co. v. Salem Baptist Church,
985 F. Supp. 2d 624 (E.D. Pa. 2013)………………………………………………………13

H. L. Libby Corp. v Fireman's Fund Ins. Co.,
2006 U.S. Dist. LEXIS 50433 (W.D. Pa 2006)……………………………………………....14

USX Corp. v Liberty Mutual Ins. Co.,
444 F.3d 192 (3d Cir. 2006)……………………………………………………………………14

Hyde Athletic Indus. Inc. v Continental Cas. Co.,
969 F. Supp. 289 (E.D. Pa 1997)……………………………………………………………..14

## **STATUTES and RULES**

Fed. R. Civ. P. 12(c) …………………………………………………………………………..7

## **INTRODUCTION**

Plaintiff / Counterclaim Defendant, Markel American Insurance Company ("MAIC"), by and through its attorneys, McAngus Goudelock & Courie, LLC, files this Motion for Judgment on the Pleadings seeking a declaration that it is not required to defend or indemnify Defendant / Counterclaim Plaintiff, March Fwd, LLC f/k/a MWealth Advisors ("MWealth"), in connection with a lawsuit titled <u>Paul and Marie Friedman v. March Fwd, LLC f/k/a MWealth Advisors and Lake Forest Bank & Trust Company, N.A. d/b/a Wintrust Life Finance</u>, currently pending in the Montgomery County, PA Court of Common Pleas and filed under Civil Action No. 2023-23101 (the "<u>Friedman</u> Action")(a copy of the Amended Complaint in the <u>Friedman</u> Action is attached hereto as Exhibit "A").

The <u>Friedman</u> Complaint avers that MWealth's principal, Mr. Babson, executed a Master Promissory Note to effectuate a single, unified "scheme"[1] upon the Friedmans. The alleged scheme had three components: (a) overvaluing the Friedmans' business to justify the issuance of life insurance policies with excessive face values; (b) naming Mr. Babson as Trustee of certain trusts in the Friedman's names; and (c) financing premiums for the life insurance policies through a Promissory Note executed by Mr. Babson as Trustee for the Friedmans. The Promissory Note indebted the Friedmans to co-defendant Wintrust Life Finance in the amount of $809,499.00[2]. The life insurance policies carried a combined face amount of just under $30,000,000.00, with annual premiums of approximately $300,000. (Exhibit "A" at ¶¶ 30-31).

The Friedmans allege Mr. Babson told them "they would never have to pay out-of-pocket to maintain the Penn Mutual Policies"; however, the financial scheme instead plunged them into

---

[1] "This matter arises out of a scheme to take advantage of an enterprising young couple by selling them tens of millions of dollars in unsuitable life insurance policies" (Exhibit "A" at ¶ 1).

[2] The <u>Friedman</u> Complaint alleges that the Promissory Note obligation later ballooned to an outstanding principal of $2,376,848.56. (Exhibit "A" at ¶ 44).

irrecoverable financial debt solely to generate substantial commissions for MWealth. (Exhibit "A" at ¶¶ 26, 33, 44).

MAIC issued a Company Sponsored Life Insurance Agents Professional Liability Master Policy (Master Policy No. MKLM7PLCA00065) (the "Policy") to MWealth. (A copy of the MAIC Policy is attached hereto as Exhibit "B").

The MAIC policy has an applicable exclusion as follows:

### SECTION VI- EXCLUSIONS

*This Policy shall not apply to, and the Insurer shall pay neither Damages nor Claim Expenses for, any Claim:*

U.    *Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:*

1.    *Promissory notes, viatical or life settlements involving terminally ill clients in accordance with the definition of "terminally ill" by the relevant state, or any Securities back by promissory notes or such viatical settlements;*

Absent the alleged execution of the Master Promissory Note by Mr. Babson, the alleged "scheme" could not have been effected.[3] As such, it unquestionably "arose out of, was based upon, was in consequence of, and directly or indirectly resulted from * * * (a) "Promissory note" and all of the allegations in the Amended Complaint fall within the scope of the exclusion.

The Middle District of Pennsylvania addressed a similar exclusion in a professional liability policy in Cont'l Cas. Co. v. Adams, No. 3:CV-02-1122, 2003 U.S. Dist. LEXIS 16434 (M.D. Pa. Sept. 12, 2003). Chief Justice Vanaskie ruled that an alleged check-kiting scheme fell

---

[3] "To subsidize the hundreds of thousands of dollars in annual premium payments demanded of them by the Penn Mutual Policies, Plaintiffs were advised to seek premium financing services from Wintrust Life Finance. * * * Andrew Babson, the trustee of the Friedman Family Trusts, executed a Master Promissory Note dated October 28, 2021 with Wintrust Life Finance". (Exhibit "A" at ¶¶ 34-35).

entirely within an applicable exclusion for claims involving an entity other than the named insured. Noting that identical lead-in language to the exclusion at issue was exceptionally broad,[4] Justice Vanaskie held the scheme at issue could not have been perpetrated but for the excluded activity and the policy had no duty to defend or indemnify the same as a matter of law.  Id.

Here, the entire Friedman Action is also premised on a single, alleged "scheme".  And, like the Adams case, the scheme alleged in the underlying Friedman Complaint could not have been effected without the insured executing the Promissory Note which financed the life insurance policies at issue.

As such, the entire Friedman Action falls within the scope of Exclusion "U" in the MAIC policy and MAIC is entitled to a judicial declaration that it has no duty to defend or indemnify Mwealth in the underlying Friedman Action.

Moreover, MAIC is entitled to dismissal of MWealth's counterclaims for bad faith, breach of contract, breach of duty of good faith and fair dealing and request for declaratory judgment, as the Promissory Notes Exclusion bars coverage for any claims or losses in the Friedman Action in the first instance.

## **PROCEDURAL AND FACTUAL BACKGROUND**

On or about October 18, 2023, the Friedmans initiated the Friedman Action against MWealth. The Amended Complaint in the Friedman Action includes the following allegations pertinent to this Motion[5]:

---

[4] "the parties have not cited, and research has failed to disclose, any case applying an exclusion as broadly worded as Exclusion L".  Id at 24-25.

[5] A copy of the Amended Complaint in the Friedman Action is attached to the Motion for Judgment on the Pleadings. Where appropriate and necessary, a court may consider "an undisputedly authentic document … if the plaintiff's claims are based on the document." Leithbridge Co. v Greenwich Ins. Co., 464 F Supp. 3d 734, 738 (E.D. Pa 2020), quoting Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

1.    This matter arises out of a scheme to take advantage of an enterprising young couple by selling them tens of millions of dollars in unsuitable life insurance policies.

…

17.    As part of the supposed wealth management strategy, MWealth advised the Friedmans and facilitated the development of various estate planning documents, including the creation of two trusts: The Irrevocable Trust of Paul Friedman, and the Irrevocable Trust of Marie Friedman, both of which were dated June 7, 2021.

…

19.    Concurrent with the creation of the trusts, MWealth advised the Friedmans to apply for two whole life insurance policies through the Penn Mutual Life Insurance Company ("Penn Mutual"), with the aforementioned Friedman Family Trusts serving as the owners of the life insurance policies.

20.    In a direct conflict of interest both individually and for his company, MWealth officer and insurance broker of record for the Friedmans, Andrew Babson, advised the Friedmans to name him as trustee for both of the subject Friedman Family Trusts.

21.    MWealth further advised the Friedmans that the value of their business, Anvil Stucco Remediation and Restoration, qualified them for large amounts of life insurance.

…

23.    MWealth advised the Friedmans that the total value of Anvil in 2021 was $20 million, and the estimated future value of Anvil would grow to over $120 million by the year 2030.

…

26.    In time, it would become apparent that the purpose of MWealth's valuation was not to accurately appraise Anvil, but was solely and deliberately to generate income for MWealth and its principals; first by securing a large fee for a false and flawed business valuation, and second, to importune the Friedmans to buy life insurance at a level they did not need and was unjustified by any reasonable financial analysis; but which generated huge commissions for MWealth.

…

30.    Effective on or about September 18, 2021, Penn Mutual issued a whole life policy held by the Irrevocable Trust of Marie Friedman. This policy carried a face amount of $4,444,820, with an annual premium payment of $38,563.26.

31.     Effective on or about November 4, 2021, Penn Mutual issued a whole life insurance policy held by the Irrevocable Trust of Paul Friedman. This policy carried a face amount of $25 million, with an annual premium payment of $263,200.

…

33.     MWealth advised the Friedmans that they would never have to pay out-of-pocket to maintain the Penn Mutual Policies.

34.     To subsidize the hundreds of thousands of dollars in annual premium payments demanded of them by the Penn Mutual Policies, Plaintiffs were advised to seek premium financing services from Wintrust Life Finance.

35.     Andrew Babson, the trustee of the Friedman Family Trusts, executed a Master Promissory Note dated October 28, 2021 with Wintrust Life Finance for a variable rate loan of $809,499.00. This was a further act of conflict of interest between his duties as trustee and his self-interest in gaining income.

…

37.     As collateral for the loan, in addition to the value of the Penn Mutual Policies, the Friedmans obtained, at Babson's direction, letters of credit secured by real property owned by the Friedmans with an address of 917 S. 19th Street, Philadelphia, Pennsylvania 19146.

…

47.     Due to the deceptive and predatory practices of Defendants, alone and in combination, Plaintiffs were fitted with grossly unsuitable life insurance policies which have exposed Plaintiffs to huge out-of-pocket costs and continuously mounting financial obligations.

See Exhibit "A" at ¶¶ 1, 17, 19-21, 23, 26, 30-31, 33-35, 37 and 47.

Subsequent to the filing of the Friedman Action, MWealth issued a demand for defense and indemnity to MAIC. MAIC ultimately agreed to provide a defense for MWealth in the Friedman Action subject to a reservation of rights, and filed the instant Complaint for Declaratory Judgment in this Court on April 5, 2024. (MAIC's Complaint for Declaratory Judgment is attached hereto as Exhibit "C").

On August 23, 2024, MWealth filed an Answer with Affirmative Defenses to MAIC's Complaint for Declaratory Judgment and asserted counterclaims for bad faith, breach of contract, breach of duty of good faith and fair dealing and request for declaratory judgment against MAIC.

In its Answer with Affirmative Defenses and Counterclaims, MWealth states, *inter alia*, that MAIC did not have a reasonable basis for refusing to undertake the duty to defend MWealth in the Friedman Action; MAIC accepted MWealth's premiums for a professional liability Policy; MAIC's acceptance of premiums and subsequent refusal to defend or indemnify MWealth is outrageous; and MAIC knew of and/or recklessly disregarded its lack of reasonable basis in denying MWealth's claim. Moreover, MWealth asserts that MAIC failed to properly administer and/or investigate the claim to the detriment of MWealth; MAIC unreasonably delayed its provision of a defense in the Friedman Action; and, as a result of MAIC's bad faith conduct, MWealth has sustained significant damages, including attorney's fees, costs and the potential loss of strategic momentum in the Friedman Action. (MWealth's Answer with Affirmative Defenses and Counterclaims is attached hereto as Exhibit "D"; see Exhibit "D" at ¶¶ 51-59). Finally, MWealth avers that MAIC breached the insurance contract and duty of good faith and fair dealing by denying MWealth's claims for coverage. (See Exhibit "D" at ¶¶ 60-74).

On September 12, 2024, MAIC filed an Answer with Affirmative Defenses to MWealth's Counterclaims. (MAIC's Answer with Affirmative Defenses to MWealth's Counterclaims is attached hereto as Exhibit "E"). On October 10, 2024, this Court conducted a telephonic Rule 16 Conference wherein the parties agreed to conduct dispositive motion practice on the pleadings. On October 22, 2024, the Court issued a Scheduling Order for dispositive motion practice in this matter. (The Court's October 22, 2024 Scheduling Order is attached hereto as Exhibit "F"). On November 14, 2024, the Court issued an Amended Scheduling Order for dispositive motion

practice. (The Court's November 14, 2024 Amended Scheduling Order is attached hereto as Exhibit "G"). The pleadings are now closed and this matter is ripe for disposition.

## LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(c) Motion

Pursuant to Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings "after the pleadings are closed–but early enough not to delay the trial..." A Motion for Judgment on the Pleadings should be granted if the movant establishes that there are no material issues of fact, and he/she is entitled to judgment as a matter of law. Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017) (quotations omitted).

### B.    Interpretation of Insurance Policy in Pennsylvania

MAIC files the instant Motion for Judgment on the Pleadings based on a Promissory Notes Exclusion contained within the Policy. Under Pennsylvania law, the interpretation of an insurance contract is a question of law. 401 Fourth St., Inc. v. Investors Ins. Group, 879 A.2d 166, 170 (Pa. 2005). Generally, a court performs the task of interpreting an insurance contract and "[t]he purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." Harleysville Worcester Ins. Co. v. Gateway Petroleum Tech., Inc., 2021 U.S. Dist. LEXIS 189424 at *5-6 (E.D. Pa. September 30, 2021) (citing 401 Fourth St., Inc., 879 A.2d at 171). "[A]ll provisions of an insurance contract must be read together and construed according to the plain meaning of the words involved, so as to avoid ambiguity while at the same time giving effect to all of its provisions." Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 517 (3d Cir. 2012) (quoting Masters v. Celina Mut. Ins. Co., 224 A.2d 774, 776 (Pa. Super. 1966)). Where no genuine issues of material fact exist and "[w]hen the

language of the policy is clear and unambiguous, a court is required to give effect to that language." <u>401 Fourth St., Inc.,</u> 879 A.2d at 171.

"Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning." <u>Pa. Nat'l Mut. Cas. Ins. Co. v. St. John,</u> 106 A.3d 1, 14 (Pa. 2014) (citing <u>Lititz Mut. Ins. Co. v. Steely,</u> 785 A.2d 975, 978 (Pa. 2001)). An insurance policy is not ambiguous simply because "the parties disagree about its meaning, and policy language should not be stretched beyond its plain meaning to create an ambiguity." <u>Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.,</u> 539 F. Supp. 3d 409, 415 (E.D. Pa. 2021) (<u>citing Meyer v. CUNA Mut. Ins. Soc.,</u> 648 F.3d 154, 164 (3d Cir. 2011)). "Ambiguous terms must be strictly construed against the insurer, but the policy language must not be tortured to create ambiguities where none exist." <u>Sikirica v. Nationwide Ins. Co.,</u> 416 F.3d 214, 220 (3d Cir. 2005). "The Court [should] adopt the interpretation which, under all the circumstances of the case, ascribes the most reasonable, probable and natural intention of the parties, bearing in mind the objects manifestly to be accomplished." <u>Galvin v. Occidental Life Ins. Co. of Cal.,</u> 211 A.2d 120, 122 (Pa. Super. 1965).

In an insurance coverage dispute, the insured "bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage." <u>State Farm Fire & Cas. Co. v. Estate of Mehlman,</u> 589 F.3d 105, 111 (3d Cir. 2009). If the insured meets this initial burden, and the insurer denies coverage on the basis of a policy exclusion, the insurer bears the burden of demonstrating that the exclusion applies. <u>Id.;</u> <u>Wolfe v. Ross,</u> 115 A.3d 880, 884 (Pa. Super. 2015). "Exclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of

whether the insured read the limitations or understood their import." Pacific Indem. Co. v. Linn, 766 F.2d 754, 761 (3d Cir. 1985).

## LEGAL ARGUMENT

**A.    MAIC Does Not Have a Duty to Defend MWealth Because the Allegations in the Underlying Complaint All Fall Within an Applicable Exclusion in the MAIC Policy.**

In Pennsylvania, courts strictly apply the "four-corners" rule to determine whether an insurance carrier has a duty to defend an insured. A court must compare the four corners of a complaint with the four corners of an insurance contract to determine whether an insurance company is obligated to defend a claim against an insured. No extrinsic evidence may be considered, and coverage is determined solely by the allegations of the operative pleading and the terms and conditions of the insurance policy. See, Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co., 939 F.3d 243, 252 (3d Cir. 2019)("although this bright-line standard may 'leave[] would-be insureds in the lurch if a covered claim is not identifiable in the complaint,' Pennsylvania courts have allowed for this possibility 'in exchange for a clear rule's benefit.'"), quoting Lupu v Loan City, LLC, 903 F.3d 382, 392 (3d Cir. 2018). Hence the duty to defend arises only when the underlying complaint may potentially come within the insurance coverage afforded in the policy. Penn Nat'l Ins. v. HNI Corp., 482 F. Supp. 2d 568, 607 (M.D. Pa. 2007) (citing Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999)).

In the matter of Cont'l Cas. Co. v. Adams, No. 3:CV-02-1122, 2003 U.S. Dist. LEXIS 16434 (M.D. Pa. Sept. 12, 2003), the United States District Court for the Middle District of Pennsylvania addressed insurance coverage for an alleged check-kiting scheme perpetrated by an employee of an insured non-profit corporation. The applicable Exclusion L provided:

> The insurer shall not be liable to pay any loss in connection with any claim: **based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving** any actual or alleged conduct by the individual insureds

in the discharge of their duties as directors, officers, trustees, employees or volunteers of any entity other than the [insured] Entity or [insured] Charitable Organization, even if directed or requested by the [insured] Entity to serve as directors, officers, trustees, employees or volunteers of such entity.

Adams, 2003 U.S. Dist. LEXIS 16434 at *9 (emphasis added).

The Adams Court determined that the check-kiting scheme "could only be effectuated by actions taken by individual insureds in the discharge of their duties as directors and officers of both the insured entity, HSC, and the uninsured entity, HSCM." Thus, the underlying negligence claims asserted against the individual insureds … "at a minimum, 'indirectly result from,' are 'in consequence of,' or 'in some way involved' conduct … in the discharge of their duties as directors and officers of HSCM." Adams, 2003 U.S. Dist. LEXIS 16434 at *22-23.

The Adams Court ultimately held that:

"[t]he parties have not cited, and research has failed to disclose, **any case applying an exclusion as broadly worded as 'Exclusion L.**' The Third Circuit's consideration of a more limited exclusion in professional liability policies issued to attorneys, and the application of the Third Circuit's analysis of the professional liability exclusion by District Courts in the Third Circuit, however, confirm that coverage in this case is indeed excluded."

Adams, 2003 U.S. Dist. LEXIS 16434 at *24-25 (emphasis added).

Other Federal Courts have adopted the sound reasoning of Justice Vanaskie's decision in Adams. In Yocum v. St. Paul Mercury Ins. Co., 2010 U.S. Dist. LEXIS 52814 (E.D. Ark. May 27, 2010), the United States District Court for the Eastern District of Arkansas held:

**"[i]f the Underlying Complaint alleges fraudulent actions by Plaintiffs as directors of Seacat, Plaintiffs could not have taken the alleged fraudulent actions but for their positions as directors of Catfish Producers**. Even if the Policy does allow for dual capacity claims, Defendant had no duty to defend because Plaintiffs' actions as directors of Catfish Producers and as directors of Seacat were inextricably intertwined."

Yocum, 2010 U.S. Dist. LEXIS 52814 at *22 (emphasis added).

Additionally, in <u>Maui Land & Pineapple Co. v. Liberty Ins. Underwriters Inc.</u>, 2018 U.S. Dist. LEXIS 56949 (D. Haw. April 3, 2018), the United States District Court for the District of Hawaii held that an Outside Service Exclusion broadly barred coverage for an insured's conduct based on the 9th Circuit's enforcement of a broadly-worded exclusion containing "arising out of" language and also cited to the holding in <u>Adams</u>. <u>See Maui Land</u>, 2018 U.S. Dist. LEXIS 56949 at *30.

Here, the Policy does not afford any coverage to MWealth in the <u>Friedman</u> Action as a result of the Promissory Notes Exclusion. The Promissory Notes Exclusion of the Policy provides as follows:

> ### SECTION VI- EXCLUSIONS
>
> *This Policy shall not apply to, and the Insurer shall pay neither Damages nor Claim Expenses for, any Claim:*
>
> > U.    *Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:*
> >
> > > 1.    *Promissory notes, viatical or life settlements involving terminally ill clients in accordance with the definition of "terminally ill" by the relevant state, or any Securities back by promissory notes or such viatical settlements;*

The Amended Complaint in the <u>Friedman</u> Action avers that: MWealth principal, Andrew Babson, executed a Master Promissory Note dated October 28, 2021 with Wintrust Life Finance for a variable rate loan of $809,499.00; this premium financing service was intended to subsidize the hundreds of thousands of dollars in annual premium payments demanded of the Friedmans by the Penn Mutual Policies; and that the Friedmans obtained, at Mr. Babson's direction, letters

of credit secured by real property owned by the Friedmans as collateral for the loan. The scheme "could only be effectuated by actions taken by [Babson] in the discharge of [his] duties" as a principal of MWealth.  See Adams, supra at *22-23. Mr. Babson's alleged execution of the Master Promissory Note was an integral part of the alleged "scheme" upon and against the Friedmans.

Just as in Adams, Yocum and Maui Land, so too here, MWealth would not have been able to perpetrate and continue with its scheme but for the activity specifically excluded; to wit, the procurement and issuance of the Master Promissory Note. Thus, the Policy's Promissory Notes Exclusion clearly precludes coverage for the financial losses and claims and any derivative claims arising from the Friedman Action.

The Policy's Promissory Notes Exclusion is clearly worded, conspicuously displayed, presumptively valid and should be enforced in accordance with Pennsylvania law.

**B.    A Judicial Determination of No Duty to Defend Resolves all Potential Indemnity Claims and MWealth's Contractual Counterclaims.**

In Pennsylvania, the duty to defend is broader than the duty to indemnify; when an insurer is found to not have a duty to defend, it will also not have a duty to indemnify. Travelers Property Casualty Co. Of America v. Chubb Custom Insurance Co., 864 F. Supp. 2d 301, 313, n. 13 (E.D. Pa. 2012) (citing Kvaerner Metals Div. Of Kvaerner U.S., Inc. v. Commercial Union Insurance Co., 908 A.2d 888, 896 (2006)). See also Bhd. Mut. Ins. Co. v. Salem Baptist Church, 985 F. Supp. 2d 624, 631 (E.D. Pa. 2013).

For the reasons stated more fully above, MAIC does not have a duty to defend MWealth in the Friedman Action as a matter of law. Therefore, MAIC does not have a duty to indemnify MWealth nor has MAIC breached any contractual obligations owed to MWealth.

**C.    The Court Should Dismiss MWealth's Bad Faith Counterclaim Because MAIC had a Reasonable Basis to Deny Coverage and it is Providing a Defense Under a Reservation of Rights Pending this Court's Order on Duty to Defend.**

Under Pennsylvania law "to prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Rancosky v. Wash. Nat'l Ins. Co., 170 A.3d 364, 377 (2017) (citing Terletsky v. Prudential Property & Cas. Ins. Co., 649 A.2d 680 (Pa. Super. 1994)). Where it is judicially determined that an insurer has no duty to defend an underlying action complaint, its conduct cannot give rise to an action for bad faith as a matter of law. See, Frog, Switch & Mfg. Co. v. Travelers Ins. Co., supra ("[h]ere, where there was no duty to defend, there was good cause to refuse to defend against a suit"); see also, H. L. Libby Corp. v Fireman's Fund Ins. Co., 2006 U.S. Dist. LEXIS 50433 at *20 (W.D. Pa 2006)(it is axiomatic that, where no duty to defend existed, a bad faith claim regarding the insurer's denial of coverage must fail); USX Corp. v Liberty Mutual Ins. Co., 444 F.3d 192 (3d Cir. 2006); Hyde Athletic Indus. Inc. v Continental Cas. Co., 969 F. Supp. 289 (E.D. Pa 1997).

Here, MAIC agreed to provide a defense, subject to a reservation of rights, and simultaneously filed this action for Declaratory Relief.  MAIC cannot be held in bad faith as a matter of law and MWealth's Counterclaim for bad faith must be dismissed as a matter of law.

13

## <u>CONCLUSION</u>

For the foregoing reasons, MAIC respectfully requests that this Honorable Court grant its

Motion for Judgment on the Pleadings declaring that MAIC has no duty to defend or indemnify

MWealth based on the allegations in the Amended Complaint filed in the <u>Friedman</u> Action.

Respectfully submitted,

**MCANGUS GOUDELOCK & COURIE, LLC**

_____

Eric A. Fitzgerald, Esq.
Joseph G. Grady, Esq.
PA Identification Nos. 72590, 322874
Mailing Address: P.O. Box 12519
Columbia, SC 29211
2000 Market Street, Suite 2850
Philadelphia, PA 19103
T: (484) 406-4334 / F: (215) 501-5374
eric.fitzgerald@mgclaw.com
joe.grady@mgclaw.com
*Attorneys for Plaintiff / Counterclaim Defendant*
*Markel American Insurance Company*

Dated: November 21, 2024