# EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>MARCH FWD, LLC f/k/a MWEALTH ADVISORS,<br><br>Defendant. | Civil Action No. |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Markel American Insurance Company ("MAIC"), by and through its undersigned attorneys, McAngus, Goudelock & Courie, LLC, avers the following in support of its Complaint for Declaratory Judgment:

1. This is an insurance coverage action in which MAIC seeks a declaration that it is not required to defend or indemnify Defendant, March Fwd, LLC f/k/a MWealth Advisors ("MWealth"), in connection with the lawsuit titled *Paul and Marie Friedman v. March Fwd, LLC f/k/a MWealth Advisors and Lake Forest Bank & Trust Company, N.A. d/b/a Wintrust Life Finance*, currently pending in the Montgomery County, PA Court of Common Pleas and filed under Civil Action No. 2023-23101 (the "Underlying Action)."

2. For the reasons set forth below, MAIC is entitled to a declaration, pursuant to Pa.R.C.P. 1601 *et seq.* and the Declaratory Judgment Act, 42 Pa.C.S.A. § 7531 *et seq.*, as to its rights and obligations under the applicable insurance policy.

**PARTIES**

3. Plaintiff, MAIC, is a stock corporation duly organized and existing under the laws of the Commonwealth of Virginia with a principal place of business located at 4521 Highwoods Parkway, Glen Allen, VA 23060. MAIC is duly authorized to issue policies of insurance in the Commonwealth of Pennsylvania.

4. Defendant, MWealth, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 918 Maple Street, Conshohocken, PA 19428.

**AMOUNT IN CONTROVERSY**

5. In the Underlying Action, Paul and Marie Friedman (the "Friedmans") filed an Amended Complaint alleging, *inter alia*, that MWealth advised them to obtain excessive whole life insurance policies that cost hundreds of thousands of dollars in annual premium payments; MWealth has sought defense and indemnity from MAIC against these allegations; and, therefore, the amount in controversy in this declaratory judgment action exceeds $75,000. A true and correct copy of the Friedmans' Amended Complaint in the Underlying Action is attached hereto as Exhibit "A"; *see* Exhibit "A" at ¶ 34.

**JURISDICTION AND VENUE**

6. The United States District Court for the Eastern District of Pennsylvania has original jurisdiction over this action because it involves a controversy wholly between citizens of different states and the value of the matter in dispute exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

7. This Court has jurisdiction over MWealth because MWealth, either directly or by an agent:

    (a)    transacts business in the Commonwealth of Pennsylvania;

(b)  regularly does or solicits business in the Commonwealth of Pennsylvania; and

(c)  the cause of action arises from MWealth's contacts with the Commonwealth of Pennsylvania.

8.  Venue is proper under 28 U.S.C. § 1391(b)(1) because MWealth resides in this judicial district.

## FACTUAL BACKGROUND

### A. The Underlying Action

9.  The Underlying Action arises out of an alleged scheme by MWealth to take advantage of the Friedmans by selling them tens of millions of dollars in life insurance policies they did not need in order to reap huge commissions. The scheme was effected through a series of acts culminating in MWealth's principal, Andrew Babson ("Mr. Babson"), personally executing a Master Promissory Note (the "Master Promissory Note") which secured premium financing for the life insurance policies. Mr. Babson personally executed the Master Promissory Note after naming himself the Trustee of the Friedmans' family trusts. *See* Exhibit "A" at ¶¶ 1-2, 15, 26, 35.

10. The Friedmans allegedly became acquainted with Mr. Babson in or around 2020. The Friedmans then engaged MWealth to develop a comprehensive wealth management strategy, which included personal asset management, maximizing the Friedmans' business income, contingency planning for the Friedmans' livelihood and planning for the financial wellbeing of the Friedmans' children. *See* Exhibit "A" at ¶¶ 14-16.

11. At the outset, MWealth allegedly advised the Friedmans to create two (2) irrevocable trusts (individually, the "Paul Friedman Irrevocable Trust" and the "Marie Friedman

Irrevocable Trust") (collectively, the "Friedman Family Irrevocable Trusts") both dated June 7, 2021. *See* Exhibit "A" at ¶ 17.

12. Mr. Babson advised the Friedmans to name him as Trustee for the Friedman Family Irrevocable Trusts. *See* Exhibit "A" at ¶ 20.

13. In addition to the Friedman Family Irrevocable Trusts, MWealth purportedly advised the Friedmans to apply for two (2) whole life insurance policies through Penn Mutual Life Insurance Company ("Penn Mutual"). *See* Exhibit "A" at ¶¶ 17, 19.

14. According to the Amended Complaint in the Underlying Action, MWealth advised the Friedmans that the value of their business, Anvil Stucco Remediation and Restoration, would increase from a total value of $20,000,000 in 2021 to over $120,000,000 by 2030 and, as a result, they qualified for large amounts of life insurance. *See* Exhibit "A" at ¶¶ 21, 23.

15. It is further alleged that MWealth intentionally and artificially inflated the value of the Friedmans' business to increase the face value of the Penn Mutual whole life insurance policies and thereby maximize MWealth's insurance broker commission. *See* Exhibit "A" at ¶ 27.

16. Penn Mutual issued a whole life insurance policy held by the Marie Friedman Irrevocable Trust, which carried a face amount of $4,444,820 with an annual premium of $38,563.26. *See* Exhibit "A" at ¶ 30.

17. Penn Mutual also issued a whole life insurance policy held by the Paul Friedman Irrevocable Trust, which carried a face amount of $25,000,000 with an annual premium of 263,000. *See* Exhibit "A" at ¶ 31.

18. MWealth purportedly advised the Friedmans that they would never have to pay out-of-pocket to maintain the Penn Mutual whole life insurance policies. *See* Exhibit "A" at ¶ 33.

19. On or about October 8, 2021, Mr. Babson executed the Master Promissory Note with Wintrust Life Finance for a variable rate loan of $809,499.00 (the "Wintrust Loan"), which was intended to provide the financing for the Penn Mutual whole life insurance policy premiums. *See* Exhibit "A" at ¶ 35.

20. Ultimately, it is asserted that MWealth engaged in a deceptive and predatory scheme which burdened the Friedmans with grossly unsuitable life insurance policies and thereby exposed the Friedmans to huge out-of-pocket costs and continuously mounting financial obligations. *See* Exhibit "A" at ¶ 47.

21. Critical to the scheme was the financing for the life insurance policies' premiums. This financing was obtained through Mr. Babson's personal execution of the Master Promissory Note to obtain the Wintrust Loan.

**B.    MWealth's Tender To MAIC and MAIC's Disclaimer of Coverage**

22. On July 6, 2023, MWealth provided MAIC with a written notice of circumstance between itself and the Friedmans relating to, *inter alia*, the premium financing program for the Penn Mutual life insurance policies. A true and correct copy of the June 29, 2023 Notice of Circumstance is attached hereto as Exhibit "B".

23. On August 7, 2023, MAIC issued a letter to MWealth acknowledging the matter as a potential Claim, because the initial notice of circumstance did not rise to the level of a Claim under MAIC's insurance policy issued to MWealth (the "Potential Claim Letter"). A true and correct copy of MAIC's August 7, 2023 Potential Claim Letter is attached hereto as Exhibit "C".

24. MAIC accepted the Potential Claim Letter as a Notice of Circumstance under the policy.

25. MWealth subsequently tendered the underlying action to MAIC for defense.

26. On February 26, 2024, MAIC disclaimed coverage for the Underlying Action. A true and correct copy of MAIC's February 26, 2024 Disclaimer of Coverage is attached hereto as Exhibit "D". MAIC disclaimed coverage because, *inter alia*, all of the allegations in the Underlying Action fall within an applicable exclusion in the MAIC policy for "promissory notes".

27. MAIC subsequently agreed to substitute a Reservation of Rights for the Disclaimer of Coverage, and to provide a defense to MWealth while it pursues this action for Declaratory Relief. A true and correct copy of MAIC's Reservation of Rights letter is attached hereto as Exhibit "E".

**C.     The Policy**

28. MAIC issued a Company Sponsored Life Insurance Agents Professional Liability Master Policy (Master Policy No. MKLM7PLCA00065) (the "Policy") with effective dates of August 1, 2022 to August 1, 2023 to MWealth principal, Kevin Crowley. A true and correct copy of the Policy is attached hereto as Exhibit "F".

29. The Policy contains the following applicable exclusion (the "Promissory Notes Exclusion"):

> ***SECTION VI- EXCLUSIONS***
>
> *This Policy shall not apply to, and the Insurer shall pay neither Damages nor Claim Expenses for, any Claim:*
>
> > U.    *Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving:*

> 1. *Promissory notes, viatical or life settlements involving terminally ill clients in accordance with the definition of "terminally ill" by the relevant state, or any Securities back by promissory notes or such viatical settlements;*

## COUNT I – DECLARATORY JUDGMENT

**The Underlying Action Falls Entirely Within The Promissory Notes Exclusion**

30.   MAIC repeats and re-alleges its allegations in paragraphs 1 through 29 of the Complaint for Declaratory Judgment as if set forth at length herein.

31.   The lead-in language to the Promissory Notes Exclusion is exceedingly broad as it applies to any claim "arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving: Promissory notes."

32.   The Underlying Action arises out of a single alleged "scheme". MWealth is alleged to have engaged in the following: (a) overvaluing the Friedmans' business to justify the issuance of life insurance policies with excessive face values; (b) naming its principal, Mr. Babson, as Trustee of the Friedman Family Irrevocable Trusts; and (c) financing the premiums for the life insurance policies through the Master Promissory Note executed by Mr. Babson.

33.   The intent of the alleged "scheme" was the generation of "huge commissions" for MWealth.

34.   As alleged in the Underlying Action's Amended Complaint, the "scheme" could not have been effected absent the execution of the Master Promissory Note by Mr. Babson.

35.   As alleged in the Underlying Action's Amended Complaint, the "scheme" arose out of, was based upon, was in consequence of, and directly or indirectly resulted from the execution of the Master Promissory Note by Mr. Babson.

36. There are no allegations in the Underlying Action's Amended Complaint which do not arise out of the "scheme".

37. All of the allegations in the Underlying Action's Amended Complaint arose out of, were based upon, were in consequence of, and directly or indirectly resulted from the execution of the Master Promissory Note by Mr. Babson.

38. All of the allegations in the Underlying Action's Amended Complaint fall entirely within the scope of the Policy's Promissory Notes Exclusion.

39. Accordingly, the Policy does not afford any coverage to MWealth in the Underlying Action.

40. MAIC has no duty to defend MWealth in the Underlying Action.

41. Because MAIC has no duty to defend MWealth in the Underlying Action, MAIC also has no duty to indemnify MWealth in the Underlying Action.

42. MAIC is entitled to a judicial declaration that it has no duty to defend or indemnify MWealth in the Underlying Action.

**WHEREFORE**, Plaintiff, MAIC, respectfully requests that the Court Declare that:

a. MAIC has no duty to defend MWealth in the lawsuit titled *Paul and Marie Friedman v. March Fwd, LLC f/k/a MWealth Advisors and Lake Forest Bank & Trust Company, N.A. d/b/a Wintrust Life Finance*, filed under Civil Action No. 2023-23101, currently pending in the Montgomery County, PA Court of Common Pleas;

b. MAIC has no duty to indemnify MWealth in the lawsuit titled *Paul and Marie Friedman v. March Fwd, LLC f/k/a MWealth Advisors and Lake Forest Bank & Trust*

*Company, N.A. d/b/a Wintrust Life Finance*, filed under Civil Action No. 2023-23101, currently pending in the Montgomery County, PA Court of Common Pleas; and

c.      MAIC is entitled to judgment in its favor together with such other and further relief as the Court may deem appropriate.

                                                **McANGUS GOUDELOCK & COURIE, LLC**

                                                Eric A. Fitzgerald, Esq.
Joseph G. Grady, Esq.
PA Identification Nos. 72590, 322874
Mailing Address: P.O. Box 12519
Columbia, SC 29211
2000 Market Street, Suite 780
Philadelphia, PA 19103
T: (484) 406-4334 / F: (215) 501-5374
eric.fitzgerald@mgclaw.com
joe.grady@mgclaw.com
*Attorneys for Plaintiff*
*Markel American Insurance Company*

Dated:  April 5, 2024