# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARKEL AMERICAN INSURANCE COMPANY** | : | Civil Action No. 2:24-cv-01438 |
| *Plaintiff* | : | |
| v. | : | |
| **MARCHFWD, LLC f/k/a MWEALTH ADVISORS** | : | |
| *Defendant.* | : | |

# DEFENDANT MARCHFWD, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF MARKEL AMERICAN INSURANCE COMPANY'S <u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................................ 3

**I.     INTRODUCTION** ............................................................................................................ 4

**II.    FACTUAL BACKGROUND** ........................................................................................... 5

**III.   ARGUMENT** ..................................................................................................................... 6

   a. Legal standard ................................................................................................................ 6

   b. The Friedmans' Complaint explicitly alleges that Mr. Babson was not acting as an agent of MWealth when he executed the Promissory Note. ........................................... 7

   c. Even if the Purported Exclusion applies, it has no effect on the MAIC's duty to defend the other allegations and claims in the Friedmans' Complaint. .................................... 12

   d. MWealth's counterclaims are warranted. ..................................................................... 15

**IV.    CONCLUSION** ............................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*American and Foreign Ins. Co. v. Jerry's Sport Ctr.*, 2 A.3d 526, 541 (Pa. 2010) ........................ 8
*Behar v. Pa. Dep't of Trans.*, 791 F.Supp.2d 383, 389 (M.D. Pa. 2011) ........................................ 7
*Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 521 (Pa. Super. 1992) ........................ 13
*Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 911 (Pa. 2019) ........................................... 7
*Continental Cas. Co. v. Adams,* 2003 WL 22162379 (M.D. Pa. 2003) ........................................... 9
*Continental Ins. Co. v. Pa. Elec. Co.*, No. 165 WDA 2024, 2024 WL 4440953, at *12 (Pa. Super. Oct. 8, 2024) ................................................................................................................................. 14
*EEDW LLC v. Bank of America, N.A.*, NO. 2:22-cv-02648, 2024 WL 2802847, at *7 (E.D. Pa. May 31. 2024) ................................................................................................................................. 16
*EMD Performance Materials Corp. v. Marque of Brands Americas LLC*, 578 F.Supp.3d 670, 678 (E.D. Pa. 2022) ................................................................................................................. 7, 15
*Erie Ins. Exch. v. Moore*, 228 A.3d 258, 268 (Pa. 2020) ................................................................ 9
*Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) .......... 9, 12
*Hannibal v. Solid Waste Servs., Inc.*, 311 A.3d 594, 2023 WL 8761934,(Pa. Super. 2023) ........ 13
*I.S. Indus., Inc. v. Export-Import Bank of U.S.*, No. CIV.A. 99–CV–3361, 2000 WL 378137(E.D. Pa. Apr. 12, 2000) ......................................................................................................................... 7
*Jerry's Sport Ctr.*, 2 A.3d at 542 ................................................................................................... 14
*Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750, 752 (2d Cir. 1949) ........................................ 9
*Mfr. Assoc. Ins. Co. v. Johnson Matthey, Inc.*, 243 A.3d 298, 305 (Pa. Commw. 2020) ............. 14
*Moore*, 228 A.3d 258 at 265 ......................................................................................................... 10
*Pa. Nat. Mut. Cas. Ins. Co. v. Traveler's Ins. Co.*, 592 A.2d 51, 53 (Pa. Super. 1991) ................. 7
*Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) ................................................ 7
*Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. 2005) .................................................. 16
*Widener Univ. v. Fred S. James & Co., Inc.*, 537 A.2d 829, 832 (Pa. Super. 1988) .................... 13
*Yocum v. St. Paul Mercury Ins. Co.*, No. 5:09–CV–00123–WRW, 2010 WL 2179137 (E.D. Ark. May 27, 2010) ............................................................................................................................. 10

**Statutes**
42 Pa.C.S.A. § 8371 ...................................................................................................................... 15
Restatement (Second) Contracts § 205 ........................................................................................ 16

**Rules**

Fed.R.Civ.P. 12(c) .......................................................................................................................... 7

Defendant MarchFwd, LLC, f/k/a Mwealth Advisors ("MWealth"), by and through its undersigned counsel, hereby submits the following Response in Opposition to Plaintiff Markel American Insurance Company's Motion For Judgment on the Pleadings (the "MJP").

## I.   INTRODUCTION

MWealth is a financial planning and wealth management firm that is presently in litigation with two of its former clients (the "Friedmans"). While this suit is a mix of gross exaggerations and outright fabrications (the "Underlying Action"), MWealth still requires a defense for this litigation. Shortly after it was sued for the provision of its professional services, MWealth turned the case over to its professional liability insurance carrier ("MAIC").

What followed is an all-too-familiar story for anyone who has ever dealt with an insurance company. After scouring the relevant policy (the "Policy") for any excuse to escape its contractual obligations, and ignoring every other word of the Friedmans' Complaint, MAIC now fixates on a phrase used *once* in the Friedmans' Complaint: "promissory note." Despite this promissory note being totally collateral to the Friedmans' grievances, and such complaint **explicitly absolving MWealth of responsibility for this note,** MAIC still decided that this passing reference allowed it to disclaim coverage for the suit as a whole under a purported exclusion to the Policy.

To be clear, **MWealth is not being sued for breach of this promissory note,** and the remainder of the Friedmans' Complaint is replete with core covered claims. As this purported exclusion does not even apply here, and it has **no bearing** on the remainder of the Friedmans' claims, MAIC is still obligated to provide coverage for the Underlying Action. Further, because MAIC's refusal in this regard was clearly in bad faith, MWealth has brought counterclaims relating to this blatantly unreasonable denial of coverage.

## II.     FACTUAL BACKGROUND

MWealth is a financial planning and wealth management firm operating in the Greater Philadelphia area.[1] On October 23, 2023, MWealth was sued by two former clients, and an amended complaint was ultimately filed on February 14, 2024. *See* Friedmans' Complaint, attached hereto as **Exhibit A**.[2] The Friedmans have brought six counts; violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Fraudulent Misrepresentation, Negligent Misrepresentation, Breach of Fiduciary Duty, and Professional Negligence. Ex. A, ¶¶ 49-95.

The Friedmans' grievances relate to the alleged overvaluation of their business ("Anvil") and a related decision "to buy life insurance at a level they did not need[.]"[3] *See* Ex. A, ¶¶ 22-26. As the Friedmans brought claims that were clearly covered by MWealth's professional liability policy, including negligent misrepresentation and professional negligence, MWealth submitted such suit to its professional liability carrier.

After waiting several months for MAIC's position, it responded on February 26, 2024 disclaiming coverage. ECF Doc. 1, Ex. D thereto. While conceding that MWealth principals Kevin Crowley ("Mr. Crowley") and Andrew Babson ("Mr. Babson") "appear to qualify as Insureds under the Policy," as did MWealth itself, an exclusion purportedly applied. ECF Doc. 1, Ex. D thereto, pg. 7. Specifically, the Friedmans' Complaint contains *a single use* of the phrase "promissory note," referring to a document executed by Mr. Babson as trustee of the Friedman

---

[1] *See* Services, *available at* https://marchfwd.com/services/ (last visited December 11, 2024).
[2] All exhibits attached to this Opposition have previously been filed in this case, and such exhibits are simply attached hereto for convenience.
[3] MWealth recites these averments for reference purposes only. While irrelevant to the present dispute with MAIC, MWealth simply notes that the Friedmans' accusations in this regard are categorically false. In fact, the **Friedmans** were the ones that came up with the valuation for Anvil, ***not*** MWealth.

5

Family Trust (the "Promissory Note"). *See* Ex. A, ¶ 35. Despite the fact that the Friedmans' Complaint explicitly states that Mr. Babson was ***not*** acting as an MWealth agent when he executed this note, according to MAIC, this still placed the ***entire suit*** within an exclusion found in the Policy (the "Purported Exclusion"). Policy, attached hereto as **Exhibit B**.[4]

Because of this single use of the phrase "promissory note," MAIC claimed that it was authorized to decline coverage not just relating to this discrete allegation, and not just as to Mr. Babson, ***but to MWealth as a whole***. MWealth, naturally, disagreed with this position and informed MAIC of such. On April 5, 2024, MAIC brought this declaratory judgment action to determine the scope and nature of coverage, to which MWealth answered. *See generally* ECF Doc. 1 & 6. After the relevant pleadings were closed, MAIC filed the present MJP, to which MWealth now responds.

### III. ARGUMENT

**a. Legal standard**

Rule 12(c) allows a party to move for judgment on the pleadings. Fed.R.Civ.P. 12(c). "To succeed on a motion under Rule 12(c), **the movant must clearly establish that no material issue**

---

[4] MAIC's Complaint and the MJP actually misquote this exclusion, although such erratum does not meaningfully affect the present dispute. This exclusion reads, in relevant part:

> This Policy shall not apply to, and the Insurer shall pay neither Damages nor Claim Expenses for, any Claim . . . Arising out of, based upon or in consequence of, directly or indirectly resulting from or in any way involving . . . Promissory notes, viatical settlements involving terminally ill clients in accordance with the definition of "terminally ill" by the relevant state, or any Securities backed by promissory notes or such viatical settlements[.]

Ex. B, pgs. 9 & 11 of 18. In its papers, MAIC adds "or life" between "viatical" and "settlements." *See* ECF Doc. 19, pg. 2. It is unknown how this typo came about, but the inclusion or exclusion of life settlements does not meaningfully impact interpretation of the relevant provision. MWealth notes that there is no allegation that the Friedmans are terminally ill, rendering the vast majority of this exclusion facially inapposite.

**of fact remains to be resolved** and that he is entitled to judgment as a matter of law." *Behar v. Pa. Dep't of Trans.*, 791 F.Supp.2d 383, 389 (M.D. Pa. 2011) (emphasis added and quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). "When deciding a motion for judgment on the pleadings, the court is directed to view the facts presented in the pleadings and the inferences to be drawn therefrom *in the light most favorable to the nonmoving party*." *Id.* (emphasis added).

"When interpreting the contract, the **entire contract should be read as a whole**, our interpretation must seek to give effect to all of its provisions, and **we will not interpret one provision of a contract in a manner which results in another portion being annulled.**" *EMD Performance Materials Corp. v. Marque of Brands Americas LLC*, 578 F.Supp.3d 670, 678 (E.D. Pa. 2022) (emphasis added and quoting *Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 911 (Pa. 2019)). This canon of interpretation applies to insurance policies as well, which "**must be read as a whole,** not in discrete units." *I.S. Indus., Inc. v. Export-Import Bank of U.S.*, No. CIV.A. 99–CV–3361, 2000 WL 378137 at *3 (E.D. Pa. Apr. 12, 2000) (emphasis added).

Further, it is a canon of contract interpretation that any "ambiguous provisions of an insurance policy are to be *construed against the drafter and in favor of the insured.*" *Pa. Nat. Mut. Cas. Ins. Co. v. Traveler's Ins. Co.*, 592 A.2d 51, 53 (Pa. Super. 1991); *see also I.S. Indus.*, 2000 WL 378137 at *3 ("Since courts must construe ambiguous provisions against the insurer, reasonable interpretations of ambiguous provisions in insurance policies that are offered by the insured control.").

**b. The Friedmans' Complaint explicitly alleges that Mr. Babson was <u>not</u> acting as an agent of MWealth when he executed the Promissory Note.**

MAIC's denial of coverage here is based on a fundamentally false premise, *i.e.* that the

7

Promissory Note has anything to do with MWealth. Even the Friedman Complaint characterizes Mr. Babson's execution of this note as part of his *separate* role as "**trustee of the Friedman Family Trust**," and *not* as an agent of MWealth. Ex. A, ¶¶ 35. To be clear, the Policy is not held by the Friedman Family Trust, nor Mr. Babson personally. As such, it is categorically unreasonable for MAIC to deny coverage for MWealth as a whole when the complaint at issue **explicitly describes** Mr. Babson as acting in a *different capacity* than his role with MWealth at the time of the alleged conduct. And even if MAIC disagrees with the Friedmans' characterization of Mr. Babson's actions 1.) that is contradicted by the plain language of Friedmans' Complaint, and 2.) it is premature to make this challenge, as there has been no discovery conducted into these disputed facts.

If a final legal determination as to Mr. Babson's role in the Underlying Action contradicts the Friedmans' present characterization, then perhaps MAIC may not have a duty to *indemnify*. But such a determination is impossible at this juncture, and the duty to defend arises out of the *allegations actually levied in the complaint*, not what an insurance company wishes them to be. For the time being, given the explicit language used in the Friedmans' Complaint, MAIC plainly has a duty to defend MWealth in the Underlying Action.

"An insurer's duty to defend is broader than its duty to indemnify [and] is a distinct obligation, separate and apart from the insurer's duty to provide coverage." *American and Foreign Ins. Co. v. Jerry's Sport Ctr.*, 2 A.3d 526, 541 (Pa. 2010). Under this duty, the "insurer is obligated to defend its insured if the **factual allegations of the complaint on its face** encompass an injury that is actually or *potentially* within the scope of the policy." *Id.* (emphasis added) "As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend." *Id.* (quoting Judge Learned Hand's assertion in *Lee v. Aetna Casualty & Surety*

*Co.*, 178 F.2d 750, 752 (2d Cir. 1949)).

"In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true **and liberally construed in favor of the insured.**" *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (emphasis added); *see also Erie Ins. Exch. v. Moore*, 228 A.3d 258, 268 (Pa. 2020) (stating that "[t]he truth of the complaint's allegations is not at issue when determining whether there is a duty to defend"). Because of the foregoing, MAIC is precluded from recasting the plain language of the Friedmans' Complaint, which speaks clearly as to Mr. Babson's role when it comes to the Promissory Note at issue.

Here, the Friedmans' Complaint explicitly alleges that Mr. Babson was acting in a ***different*** capacity than his role with MWealth when he executed this note, namely "as trustee of the Friedman Family Trust[.]" Ex. A, ¶ 35. Indeed, these dual capacities were so antithetical that the Friedmans actually claim this rises to the level of a **conflict of interest.** *See* Ex. A, ¶ 20. In other words, ***even the Friedmans*** allege that Mr. Babson was engaged in two **separate** roles during the relevant time period, *i.e.* MWealth officer and Friedman Family Trust trustee.

The fact that the Friedmans explicitly distinguished between Mr. Babson's role as trustee and his role with MWealth obliterates any reliance by MAIC on *Continental Cas. Co. v. Adams,* 2003 WL 22162379 (M.D. Pa. 2003). Unlike the case at bar, the allegations at issue in *Adams* did "***not distinguish among the roles*** played by [the individual insureds] in the corporate defendants" and "the Amended Complaint ***does not purport to distinguish between actions taken on behalf of one corporation and actions taken on behalf of the other***." *Id.* at *8-9 (emphasis added). This is in stark contrast to the Friedmans' Complaint, which **explicitly distinguishes** between Mr.

9

Babson's role as trustee and his role with MWealth.[5] Because MAIC cannot prevail on the plain language of its own Policy or the Friedmans' Complaint, the MJP hangs its hat on *Adams*, a two-decade-old, unpublished case from another district that deals with an entirely different contract and complaint.

The denial of coverage is particularly unjust and illogical here, as **Mr. Babson does not individually hold this Policy**, and his actions in an entirely different context should not deny coverage to MWealth as a whole. If coverage could be denied based on Mr. Babson's alleged conduct in an entirely separate capacity, this would leave MWealth's other members and employees without coverage, not to mention the company itself. Now certainly, to the extent Mr. Babson is alleged to have been acting ***as an agent of MWealth*** for any covered conduct, he would still be included as an insured under such Policy. But the **sole** paragraph on which MAIC bases its **entire** denial explicitly alleges that Mr. Babson was ***not*** acting as an agent of MWealth at the time of this conduct.

For present purposes, the allegations in the Friedmans' Complaint must be accepted as true, and the truth or falsity of such averments are simply "not at issue when determining whether there is a duty to defend." *Moore*, 228 A.3d 258 at 265. MAIC simply ignores the plain language of the Friedmans' Complaint, the vast majority of which levies allegations that falls squarely within MWealth's professional liability insurance policy, and the remainder of which specifically excludes MWealth from any involvement in the Promissory Note.

---

[5] Equally inapplicable is MAIC's reference to another unpublished case, this time from the Eastern District of Arkansas. *See generally Yocum v. St. Paul Mercury Ins. Co.*, No. 5:09–CV–00123–WRW, 2010 WL 2179137 (E.D. Ark. May 27, 2010). Far from the allegations there that the directors' dual capacity was "inextricably intertwined," the Friedmans here have alleged that Mr. Babson's dual roles were so divergent that they created a conflict of interest. *Id.* at *6. Again, MAIC must take the Friedmans' Complaint as filed, and it cannot recast the plaintiffs' claims as pled to contort its way out of coverage.

In the MJP, MAIC claims that the Friedmans' Complaint arises out of "a single, unified scheme[.]" ECF Doc. 19-10, pg. 1. Of course, this language appears **nowhere** in the Friedmans' Complaint, which actually alleges a scattershot list of *separate* grievances. Equally conclusory is MAIC's declaration that "[a]bsent the alleged execution of the Master Promissory Note by Mr. Babson, the alleged 'scheme' could not have been effected." ECF Doc. 19-10, pg. 2. Again, nowhere in the Friedmans' Complaint does it allege that this was the only way that this "scheme" could be effected, and even the Friedmans know that this is not true. The Friedmans were very wealthy individuals, they could have obtained this financing through any number of sources, and anyone could have been the trustee of their family trust. Because it cannot rely on the plain language of the Friedmans' Complaint to deny coverage, MAIC simply weaves non-existent allegations out of whole cloth in its desperate attempt to escape its contractual obligations.

Indeed, most of this alleged "scheme" has nothing to do with the Promissory Note at all, and the allegations relating to *MWealth* are wholly divorced from Mr. Babson's separate execution of the Promissory Note as trustee.[6] Discovery will reveal that the Friedmans could have financed these premiums in any number of other ways, and the exact vehicle through which this financing came is essentially immaterial. The Friedmans' core grievances relate to the alleged overvaluation

---

[6] In its entirety, MWealth's involvement in this "scheme" is summarized by the Friedmans as:

> In time, it would become apparent that the purpose of MWealth's valuation was not to accurately appraise Anvil, but was solely and deliberately to generate income for MWealth and its principals; **first** by securing a large fee for a false and flawed business valuation, **and second** to importune the Friedmans to buy life insurance at a level they did not need and was unjustified by any reasonable financial analysis; but which generated huge commissions for MWealth.

Ex. A, ¶ 26. **There is no "third" as MAIC falsely implies in its Brief**, and MWealth's involvement in this scheme is limited to the **two** above allegations, neither of which deal with promissory notes.

11

of their business and unnecessarily large life insurance policy, and there is a reason why the term "promissory note" only appears once in the entire complaint.

*At best* MAIC may be entitled disclaim coverage *after* the Underlying Action has resolved, if it is determined that the Friedmans were wrong in their characterization of Mr. Babson, and he is found to have been acting as an MWealth officer at the time of the challenged conduct. So too could MAIC plausibly deny defense costs for Mr. Babson as an individual **solely** when it comes to his execution of the Promissory Note, although they would still be obligated to defend him for any actions he did take as an agent of MWealth. As discussed *infra* however, the reason that MAIC declined to take this (far more reasonable) position is that the Promissory Note is only a minor detail of Mr. Babson's alleged conduct in this action, let alone the overall universe of allegations made against MWealth.

At present, the Friedmans have explicitly alleged that Mr. Babson was *not* acting in his capacity as MWealth officer when he executed the Promissory Note, and this must be accepted as true when assessing an insurance company's duty to defend. MAIC has no basis to deny coverage to the company as a whole, let alone refuse the far broader duty to defend, based on the conduct of a single member acting in an entirely separate capacity. This is particularly true in a case like the present, where any ambiguities in the Policy are to be construed against MAIC, and any "factual allegations of the underlying complaint . . . liberally construed in favor of the insured." *Frog, Switch & Mfg. Co.*, 193 F.3d at 746.

**c. Even if the Purported Exclusion applies, it has no effect on the MAIC's duty to defend the other allegations and claims in the Friedmans' Complaint.**

The Friedmans' Complaint is a sprawling 21-page, six count, thicket of exaggerations and fabrications. *See generally* Ex. A. As discussed, the phrase "promissory note" is only used once in

12

the entire document. Ignoring every other paragraph of this complaint, and scouring its own 50-page Policy, MAIC cherry-picks another solitary phrase: the Purported Exclusion. MAIC then bases its denial of *all coverage*, including the duty to defend, on this myopic reading of just two paragraphs. Because the duty to defend also encompasses situations where there are both covered and uncovered claims, *even if* MAIC is correct that the Purported Exclusion applies here to certain allegations, that does not affect its obligations as to the remainder of the Friedmans' Complaint.

It is common for both covered and uncovered claims to be brought in the same litigation, and "**if any one claim in the complaint is potentially covered** by the policy, **the insurer is obligated to provide a defense** to the insured in the action[.]" *Hannibal v. Solid Waste Servs., Inc.*, 311 A.3d 594, 2023 WL 8761934, at *5 (Pa. Super. 2023) (emphasis added). Additionally, "when the insurer relies upon exclusionary language in the policy as a defense to coverage, the burden shifts to the insurer to prove that the exclusion applies to the facts of the case." *Id.* at *6 (emphasis added).

It has long been the prevailing doctrine in Pennsylvania that even a *single covered claim* is sufficient to trigger the duty to defend, as outlined by the Superior Court:

> Thus, in order to find a duty to defend, we need not find that every claim asserted in the complaint filed against the insured is within the potential coverage of the policy. Rather we **need only determine if any of the claims asserted are potentially covered. If any are, the insurer must defend** until the suit is narrowed only to claims that are definitely not within that coverage.

*Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 521 (Pa. Super. 1992) (emphasis added); *see also Widener Univ. v. Fred S. James & Co., Inc.*, 537 A.2d 829, 832 (Pa. Super. 1988) ("In Pennsylvania, an insurer with a 'duty to defend' **must provide a complete defense on behalf of its insured so long as even one allegation of the complaint falls potentially within the scope of the coverage** of the insured's policy.") (emphasis added). *Biborosch* and its progeny continue

13

to be regularly cited for this premise. *E.g. Continental Ins. Co. v. Pa. Elec. Co.*, No. 165 WDA 2024, 2024 WL 4440953, at *12 (Pa. Super. Oct. 8, 2024).

This duty to defend even a single covered claim continues indefinitely until all such claims are resolved. *See Pa. Mfr. Assoc. Ins. Co. v. Johnson Matthey, Inc.*, 243 A.3d 298, 305 (Pa. Commw. 2020) ("Where litigation involves facts potentially within the scope of the policy's coverage, **the insurance company has a duty to defend the action until all covered claims are removed from the action**.") (emphasis added); *see also Jerry's Sport Ctr.*, 2 A.3d at 542 ("The insurer's duty to defend exists until the claim is confined to a recovery that the policy does not cover.").

Here, regardless of the single use of the phrase "promissory note," the balance of claims fall squarely within MWealth's professional liability coverage. *See generally* Ex. B, pgs. 1-2 of 18. The Policy provides that MAIC "shall have the right **and duty to defend** a Claim against an Insured seeking Damages that is covered by this Policy." *See* Ex. B, pg. 2 of 18 (emphasis added). Relatedly, MAIC has the right to "select defense counsel" and the obligation to pay them. *Id.*

Further, the Policy at issue here **explicitly contemplates** a situation where a certain complaint includes both covered and uncovered claims, providing:

> **In the event that a Claim against the Sponsoring Company includes allegations that are both covered and uncovered** pursuant to this Section I – Insuring Agreement C. Sponsoring Company Vicarious Liability, as well as other terms, limitations, exclusions and conditions of the Policy, **then payments of Damages and Claim Expenses must be allocated between the Insurer and Sponsoring Company**. The Insurer and Sponsoring Company shall use their best efforts to reach a fair and reasonable agreement as to allocation.

Ex. B, Policy, pg. 2 of 18 (emphasis added). In other words, *even if* MAIC were allowed to ignore the plain language of the Friedmans' Complaint and attribute Mr. Babson's execution of the Promissory Note to MWealth generally, this would **still** not allow it to fully disclaim coverage for

14

the case as a whole.

Instead, MAIC is under an obligation to use its "best efforts to reach a fair and reasonable agreement as to allocation" of defense costs. The reason that MAIC refuses to abide by this provision is because it knows that the Promissory Note is a total sideshow in the litigation, and any apportionment relating thereto would be minimal. The vast majority of the Friedmans' grievances relate to the alleged overvaluation of their business and related size of their life insurance, and any allocation of covered vs. uncovered claims would skew heavily towards the former. To accept MAIC's position would be to "interpret one provision of a contract [*i.e.*, the Purported Exclusion] in a manner which results in another portion [*i.e.*, the covered and uncovered apportionment clause] being annulled." *EMD Performance*, 578 F.Supp.3d at 678. Such a result would be at odds with the applicable canons of interpretation.

### d. MWealth's counterclaims are warranted.

Because MAIC's refusal to provide coverage was so categorically unreasonable, as outlined *supra*, MWealth brought a counterclaim for insurance bad faith. MWealth has also brought counterclaims for breach of contract, breach of the duty of good faith and fair dealing, and for a declaratory judgment mandating that MAIC provide a defense and indemnity. *See* ECF Doc. 6, ¶¶ 51-77.

"An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." *Jerry's Sports Ctr.*, 2 A.3d at 541. Pennsylvania has a statutory cause of action for insurance bad faith, which authorizes not just costs and attorney fees, but also punitive damages against the insurer as well. *See* 42 Pa.C.S.A. § 8371.

Insurance bad faith claims are often brought in conjunction with a breach of contract claim

for breach of the underlying insurance policy. *See*, *e.g.*, *Doylestown Elec. Supply Co. v. Maryland Cas. In. Co.*, 942 F.Supp. 1018, 1019-20 (E.D. Pa. 1996) (rejecting the defendant's suggestion that such claims cannot be brought contemporaneously). Likewise, under Pennsylvania law, every contract has an implied duty of good faith and fair dealing. *See* Restatement (Second) Contracts § 205; *see also Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. 2005). This too, can form the basis of a claim if the defendant fails to conduct himself in accord with this duty. *See EEDW LLC v. Bank of America, N.A.*, NO. 2:22-cv-02648, 2024 WL 2802847, at *7 (E.D. Pa. May 31. 2024) (outlining the elements of such a claim).

MAIC's conduct here is patently unreasonable, and it never had any basis to deny coverage. One count in the Friedmans' Complaint is literally titled "Claim of Professional Negligence," and it is absurd for MAIC to suggest that this is not covered by MWealth's professional negligence policy. *See* A, ¶ 91. As discussed in § III(c) *supra*, MWealth only needs to demonstrate that ***a single claim*** is covered by the relevant policy to trigger the duty to defend, and it is simply not in good faith for MAIC to refuse coverage for this claim.

Further, despite MAIC representing in its MJP that "MAIC ultimately agreed to provide a defense for MWealth in the Friedman Action subject to a reservation of rights," **this has yet to happen.** ECF Doc. 19-10, pg. 5. MWealth has been litigating the Underlying Action for over a year, and MAIC has yet to appoint defense counsel or reimburse ***a single penny*** of the fees already incurred. As such, MAIC is trying to "play it both ways" by ***claiming*** that it is being reasonable and providing a defense here, whilst simultaneously holding off on providing such defense until after the present declaratory judgment action is resolved. This, like so much of MAIC's conduct, is not in good faith and warrants the counterclaims that MWealth has brought here.

## IV.  CONCLUSION

The reference to a certain promissory note in the Underlying Action is a complete distraction here, particularly because the Friedmans explicitly noted that it was ***not*** MWealth that executed such promissory note. All MWealth must demonstrate to trigger the duty to defend is a single covered claim and, at a minimum, "professional negligence" qualifies under this professional liability policy. MWealth respectfully submits that 1.) the Purported Exclusion does not even apply, 2.) in any event, it has no bearing on the remainder of the Friedmans' claims, and 3.) MAIC's denial of coverage here was not in good faith. Given the foregoing, MWealth asks that the MAIC's Motion for Judgment on the Pleadings be denied.

**BOCHETTO & LENTZ, P.C.**

*/s/ Ryan T. Kirk*

Date: December 12, 2024   By: _____

Gavin P. Lentz, Esquire
Ryan T. Kirk, Esquire
1524 Locust Street
Philadelphia, PA 19102
glentz@bochettoandlentz.com
rkirk@bochettoandlentz.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Ryan T. Kirk, Esquire, hereby certify that a true and correct copy of the forgoing Opposition to Plaintiff's Motion for Judgment on the Pleadings was filed electronically through this Court's ECF System and is available for viewing and downloading from this Court's ECF System. I further certify that an electronic copy of the foregoing was served upon all counsel of record through this Court's ECF System.

**BOCHETTO & LENTZ, P.C.**

Date: December 12, 2024     By: */s/ Ryan T. Kirk*
_____
Gavin P. Lentz, Esquire
Ryan T. Kirk, Esquire
1524 Locust Street
Philadelphia, PA 19102
glentz@bochettoandlentz.com
rkirk@bochettoandlentz.com
*Attorneys for Defendant*